1   Brent J. Lehman (State Bar No. 282149)
    blehman@munckwilson.com
2   Dina Ovsepian (State Bar No. 328942)
    dovsepian@munckwilson.com
3   **MUNCK WILSON MANDALA, LLP**
    1925 Century Park East, Suite 2300
4   Los Angeles, California 90067
    Telephone: (310) 855-3311
5   Facsimile:  (972) 628-3616

6   Attorney for Plaintiff,
    CHARLES EDWARD HUGO
7   p/k/a CHAD HUGO

8

                    **UNITED STATES DISTRICT COURT**

9

            **FOR THE CENTRAL DISCTRICT OF CALIFORNIA**

10

11

12  CHARLES EDWARD HUGO p/k/a          Case No. 2:26-cv-00746
    CHAD HUGO, an individual;

13              Plaintiff,

14          v.

15  PHARRELL WILLIAMS, an              **PLAINTIFF'S COMPLAINT FOR:**
    individual; N.E.R.D. MUSIC, LLC, a
16  Delaware limited liability company;   **1) BREACH OF FIDUCIARY**
    NEPTUNES, LLC/NEPTUNES LLC, a       **DUTY**
17  Delaware limited liability company; CH **2) ACCOUNTING—N.E.R.D.**
    & PW, INC., a Virgina corporation; PW    **MUSIC, LLC**
18  & CH, INC., a Virginia corporation; PW **3) ACCOUNTING—NEPTUNES,**
    BRANDING, INC., a California         **LLC/NEPTUNES LLC**
19  corporation; PW IP HOLDINGS, LLC,   **4) DECLARATORY RELIEF**
    a Delaware limited liability company;
20  TALAMASCA, INC., a Delaware         **DEMAND FOR JURY TRIAL**
    corporation; and DOES 1-10 inclusive,

21              Defendants.

22

23

24

25

26

27

28

                            COMPLAINT

1        Plaintiff CHARLES EDWARD HUGO ("Plaintiff"), by his undersigned attorneys,

2 files this complaint (the "Complaint") against defendants PHARRELL WILLIAMS

3 ("Defendant Williams")[1], N.E.R.D. MUSIC, LLC (the "Company"), Neptunes,

4 LLC/Neptunes LLC ("The Neptunes Entities"), CH & PW, INC., PW & CH, INC., PW

5 BRANDING, INC., PW IP HOLDINGS, LLC, and TALAMASCA, INC.[2]  for breach of

6 fiduciary duty, accounting, and declaratory relief. In support thereof, Plaintiff states and

7 alleges as follows:

8 **INTRODUCTION**

9       1.     Plaintiff brings this action (the "Action") for breach of fiduciary duty,

10 accounting, and declaratory relief arising from Defendant Williams' systemic denial of

11 Plaintiff's contractual and ownership rights in the Company and in The Neptunes Entities.

12       2.     Over an extended period, Defendant Williams has failed to provide Plaintiff

13 with access to essential financial records, has withheld distributions and profits to which

14 Plaintiff is entitled under the Company's Limited Liability Operating Agreement (the

15 "Operating Agreement"), and has exercised control over the Company and The Neptunes

16 Entities' revenues in a manner inconsistent with his fiduciary obligations to Plaintiff.

17       3.     Through this Action, Plaintiff seeks a judicial declaration of his rights and

18 Defendant Williams' obligations under the Operating Agreement, The Neptunes Entities

19 operating agreement, and the Defendant Entities' operating agreements; a full and

20 transparent accounting of all revenues generated through The Neptunes Entities and the

21 Company in connection with the production duo The Neptunes and the musical group

22 N.E.R.D.; and the recovery of profits and distributions wrongfully withheld by Defendant

23 Williams, the Company, and The Neptunes Entities.

24 / / /

25

26

27 [1] Plaintiff and Defendant Williams will hereinafter collectively be referred to as, the "Parties."

28 [2] CH & PW, Inc., PW & CH, Inc., PW Branding, Inc., PW IP Holdings, LLC, and Talamasca, Inc. will hereinafter collectively be referred to as, the "Defendant Entities."

1
COMPLAINT

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

6. Plaintiff Charles Edward Hugo p/k/a Chad Hugo is an individual residing in the State of Virgina. He is a founding member of the musical group N.E.R.D., the production duo The Neptunes, and co-owner of the Company and The Neptunes Entities.

7. Defendant Pharrell Williams is an individual residing in the State of Florida. Defendant Williams is a founding member of the musical group N.E.R.D., the production duo The Neptunes, and co-owner of the Company and The Neptunes Entities. Defendant Williams is the managing member of the Company. Upon information and belief, Defendant Williams is the managing member of The Neptunes Entities. Upon information and belief, Defendant Williams is the sole or controlling owner and managing member of the Defendant Entities.

8. Defendant N.E.R.D. Music, LLC is a Delaware limited liability company with its principal place of business in California.

9. Defendant NEPTUNES, LLC/NEPTUNES LLC is a Delaware limited liability company with its principal place of business in California.

10. Defendant CH & PW, INC. is a Virginia corporation with its principal place of business in California.

11. Defendant PW & CH, INC. is a Virginia corporation with its principal place of business in California.

12. Defendant PW BRANDING, INC. is a California corporation with its principal place of business in California.

13.     Defendant PW IP HOLDINGS, LLC is Delaware limited liability company with its principal place of business in California.

14.     Defendant TALAMASCA, INC. is a Delaware corporation with its principal place of business in California.

15.     The true names and capacities of Defendants sued herein as DOES 1 through 20 are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## FACTUAL ALLEGATIONS

### Parties' Relevant History and Plaintiff's Instrumental Role

16.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 15 as though fully set forth herein.

17.     Plaintiff and Defendant Williams are the founders behind the music production duo The Neptunes and the musical group N.E.R.D., two of the most influential musical forces of their generation, whose innovative, genre-blending sound helped shape modern hip-hop, R&B, and pop music.

18.     Plaintiff and Defendant Williams met as teenagers in or around the late 1980s in Virginia Beach, Virginia, through school activities and local music programs, and thereafter began collaborating musically. From the outset of their collaboration, Plaintiff contributed core compositional, instrumental, and production work, while Defendant Williams contributed performance, vocal, and songwriting elements.

19.     In or around the early 1990s, Plaintiff and Defendant Williams began operating professionally under the name "The Neptunes," a production and songwriting duo through which they developed a distinctive musical and production style. Plaintiff served as principal composer, arranger, multi-instrumentalist, and producer responsible for programming, instrumentation, and overall sound design, while Defendant Williams more frequently appeared as the public-facing member of the duo.

20.    Beginning in or about the late 1990s and continuing into the 2000s, The Neptunes wrote and produced commercially successful and critically acclaimed recordings for prominent artists in the hip-hop, R&B, and pop markets, including, among others, Britney Spears, Justin Timberlake, and Jay-Z.

21.    In or about 1999, Plaintiff and Defendant Williams, along with Sheldon "Shay" Haley ("Haley") co-founded N.E.R.D. as an artist project to perform and release original material rather than solely producing recordings for third parties. Plaintiff served as N.E.R.D.'s principal composer, multi-instrumentalist, and producer responsible for the group's genre-blending sound.

22.    In or about 2001, N.E.R.D. released its debut studio album, *In Search Of...*, followed by subsequent recordings, including *Fly or Die* and other projects, which further expanded the creative and commercial reach of the Parties' partnership. The combined success of The Neptunes and N.E.R.D. materially enhanced the professional reputations and earning capacities of Plaintiff and Defendant Williams, individually and as a duo.

23.    These recordings and related activities generated revenues from released albums and music, publishing, touring, merchandise, synchronization, and brand collaborations, all of which were enabled in substantial part by Plaintiff's contributions as a writer, producer, arranger, and performer. Although Defendant Williams often received greater public visibility, Plaintiff's contributions as a founding creative partner, co-writer, producer, and co-founder of both The Neptunes and N.E.R.D. were indispensable to the commercial value, goodwill, and brand recognition associated with these ventures.

**The Operating Agreement and Agreements Related to The Neptunes Entities**

24.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 23 as though fully set forth herein.

25.    In or about 2014, Plaintiff, Defendant Williams, and Mr. Haley formed the Company, which was memorialized in the Operating Agreement on or about December

16, 2014. The Operating Agreement was subsequently amended in or around September 1, 2017[3].

26.    The Operating Agreement at section 6.1(d) provides that "[a]ll Members shall be given on a monthly basis a statement indicating the Income and Expenses of the [the Company] for the preceding month. The Managers and Members shall be provided with copies of or access to all books and records of [the Company] on an ongoing basis and shall be provided with copies of the underlying royalty statements from all third parties promptly after receipt by [the Company]."

27.    The Operating Agreement at section 10.3 provides that "[w]ithin one hundred and twenty (120) after the end of each Fiscal Year, the Company shall cause to be delivered to each Member a financial statement of the Company for the prior Fiscal Year, prepared at the expense of the Company, which financial statement shall set forth, as of the end of and for such Fiscal Year, the following: (a) a profit and loss statement and a balance sheet for the Company; (b) the balance on each Member's Capital Account; and, (c) such information as reasonably shall be necessary for the Class A and Class B Members to be advised of the financial status and results of operations of the Company."

28.    The Operating Agreement at section 10.4 provides that upon unanimous "determination by the Managers, the Company may provide the Members quarterly operating statements and reports of the financial condition of the Company in such form as reasonably and unanimously determined by the Managers for each quarter that shall be submitted to the Members within sixty (60) days after the end of each such quarter."

29.    The Operating Agreement at Schedule "A" provides the percentage interests and category splits are as follows: Defendant Williams holds 50.0% of the Units and is entitled to 50% of "Touring and Other Income" and 33% of "Merchandise and Trademark Income;" Plaintiff and Mr. Haley each hold 25% of the Units and are each entitled to 25% of "Touring and Other Income" and 33.3% of "Merchandise and Trademark Income."

---

[3] A true and correct copy of the amended Operating Agreement is attached hereto as Exhibit "1".

30.    By virtue of Sections 6.1(a) through (d), 10.3, and the Tax Matters Member provision, Defendant Williams—as the Manager whose consent is required for Manager action, the sole authorized signatory with authority to bind the Company, and the designated Tax Matters Member—is responsible for causing the Company to (a) provide monthly statements of income and expenses; (b) furnish prompt copies of third-party royalty statements upon receipt; (c) provide ongoing access to all books and records; and (d) deliver annual financial statements (including profit and loss, balance sheet, and each Member's capital account balance) within 120 days after each fiscal year-end.

31.    Further, Plaintiff holds a fifty percent (50%) ownership interest in The Neptunes Entities and is, therefore, entitled to receive revenues corresponding to that ownership share.

32.    Upon review of the incomplete financial records produced by Defendant Williams, it appears that little revenue has been allocated to Plaintiff from The Neptunes Entities' profits, which is inconsistent with The Neptunes' evident commercial success.

33.    Notably, in or around February 2019, after a brief hiatus in their collaboration as The Neptunes, Defendant Williams expressly stated to Plaintiff that he "never wanted to work without [Plaintiff] again" and requested that Plaintiff travel to Miami, Florida to work on various songs under The Neptunes.  As part of this renewed arrangement, the Parties agreed to a 50/50 production split between them, and 50/50 of the publishing splits for each composition (the "Arrangement").  These are the same splits which were in effect throughout the entire decades-long working relationship between Plaintiff and Defendant Williams as The Neptunes.

34.    Between 2019 and 2021, Plaintiff fully performed under the Arrangement by providing all production services requested and contributing to nearly fifty (50) studio sessions conducted by The Neptunes.

35.    Thereafter, Defendant Williams failed to honor Plaintiff's entitlements under the Arrangement, denied Plaintiff his rightful publishing share and share of record

royalties, and wrongfully took full credit for Plaintiff's contributions without proper attribution or compensation.

### Defendant Williams' Breach of the Operating Agreement

36.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 35 as though fully set forth herein.

37.    Notwithstanding his contractual obligations under the Operating Agreement, Defendant Williams failed to provide the required monthly income-and-expense statements, ongoing access to books and records, prompt copies of third-party royalty statements, and annual financial statements within the prescribed period—or at all.

38.    Since 2021, Plaintiff has been in the process of trying to obtain the monthly statements, books and records, and royalty statements to which he is contractually entitled. Defendant Williams has failed to produce such documents despite repeated demands.

39.    On or about August 18, 2021, Plaintiff's then counsel sent Defendant Williams' counsel a demand letter for production of certain financial documents. No documents were produced.

40.    On or about March 18, 2022, Plaintiff's then-counsel sent a letter to Defendant Williams' counsel identifying Defendant Williams' failure to account for both the Company and The Neptunes Entities' financial records, placing Defendant Williams on notice of Plaintiff's claims and need for transparency and compensation.  Defendant Williams failed to resolve these issues.

41.    On or about March 23, 2023, Plaintiff's then-counsel again demanded Defendant Williams' compliance with the Operating Agreement's reporting and record-access provisions, expressly quoting Section 6.1(d) and requesting all the Company's financial records. The March 23, 2023, letter also addressed Plaintiff's entitlements related to The Neptunes Entities. Defendant Williams nevertheless failed to provide the monthly statements, royalty statements, or comprehensive access to books and records as required by the Operating Agreement and failed to provide financial documents related to The Neptunes Entities.

42.    On or about November 13, 2023, on Plaintiff's behalf, Citrin Cooperman sent a detailed document and information request to Defendant Williams' counsel seeking, among other things, monthly and annual financial statements, detailed general ledger data, bank statements, royalty statements, tax documents, and a schedule for profit distributions. Defendant Williams produced only a limited subset of documents, consisting of tax returns between 2016 and 2020, an incomplete collection of bank statements and ledgers, and miscellaneous production agreements related to The Neptunes Entities. However, despite the comprehensive requests, Defendant Williams failed to produce core categories of accounting and royalty documentation necessary to assess the Company and The Neptunes Entities' revenues and Plaintiff's corresponding entitlements.

43.    On May 3, 2024, Plaintiff's counsel followed up with Defendant Williams' counsel regarding the missing documents. However, additional documents were never produced.

44.    In or about December 2024, Defendant Williams' counsel promised to produce documents, but no documents were ever produced.  Notably, Defendant Williams' counsel admitted having difficulty accessing the documents but acknowledged that such documents exist.

45.    Defendant Williams' persistent failure to provide monthly statements, third-party royalty statements, annual financial statements, and ongoing access to books and records constitutes a breach of the Operating Agreement's reporting and delivery obligations by the Company, and given Defendant Williams' controlling managerial role, a breach by Defendant Williams in failing to fulfill his duties under the Operating Agreement and the Parties' agreements related to The Neptunes Entities.

46.    As a result of Defendant Williams' noncompliance, Plaintiff has been deprived of the transparency necessary to evaluate buyout proposals, confirm the calculation and categorization of distributions owed to him under the Operating Agreement, and assess revenues from The Neptunes Entities and from N.E.R.D. and all related merchandise, trademarks, and recordings.

COMPLAINT

47.    Upon information and belief, Plaintiff has not received his appropriate share of royalties in connection with The Neptunes and N.E.R.D.'s album sales and released music[4], as well as distributions from touring income, and various merchandising deals. Alternatively, Defendant Williams distributed the funds in a manner inconsistent with the Operating Agreement's explicitly stated percentage splits and agreements related to The Neptunes

48.    Upon information and belief, Plaintiff alleges that Defendant Williams entered a series of deals involving N.E.R.D. without consulting with Plaintiff or accounting for any of the proceeds to which Plaintiff is entitled.  By way of example, Defendant Williams, on behalf of the Company, entered a partnership with Corner Merchandising to which Plaintiff was entitled to 33.3% of all profits. Plaintiff received approximately $136,765 between August 2022 and September 2023.  Though merchandise sales continued past that date, Plaintiff has not received any corresponding distributions past September 2023.

49.    Further, Defendant Williams, on behalf of the Company, partnered with multiple fashion and streetwear brands[5], but no contracts or revenues have been disclosed to Plaintiff.

50.    By way of further example, and upon information and belief, Plaintiff is owed at least $325,000-$575,000, with potential damages exceeding $750k-$1M, for the *No One Ever Really Dies Album* alone, which debuted at #10 on Billboard and has millions of streams.

51.    Further, upon information and belief, Defendant Williams has diverted revenues generated by the Company and/or The Neptunes to one or more of the Defendant

---

[4] Upon information and belief, a significant number of songs are missing from Plaintiff's label portals and SoundExchange portals indicating that Plaintiff has not received the royalties he is entitled to.

[5] These brands include but are not limited to Ambush, Adidas, Billionaire Boys Club, Human Made, Cactus Plant Flea Market, Collette, Complexcon x Murakami, Illesteva, Noah, Paco Robanne (in one email it states that PR is not one of them, so verify this), Neighborhood, and Pintrill.

1  Entities, in an effort to conceal and deprive Plaintiff of his rightful share of profits and
2  royalties.

3       52.    On or about March 31, 2023, Plaintiff's then-counsel requested that the
4  Parties, the Company, The Neptunes Entities, and the Defendant Entities enter into a
5  tolling agreement (the "Tolling Agreement"), so that the Parties could pursue negotiations
6  while preserving all rights. The Tolling Agreement expires on January 24, 2026.

**COUNT I**

**<u>Breach of Fiduciary Duty</u>**

**(Against Defendant Williams)**

10      53.    Plaintiff realleges and incorporates by reference each and every allegation
11  contained in paragraphs 1 through 52 as though fully set forth herein.

12      54.    At all relevant times, Plaintiff was a founding member of N.E.R.D., with
13  contractual rights under the Company's Operating Agreement to specified shares of
14  royalties and income distributions from the Company's album releases and music, touring,
15  merchandise deals, and collaborations. Further, at all relevant times, Plaintiff was a
16  founding member of The Neptunes and holds a fifty percent (50%) ownership interest in
17  The Neptunes Entities.

18      55.    At all relevant times, Defendant Williams was a founding member of
19  N.E.R.D. and, pursuant to the Operating Agreement, the managing member, sole
20  authorized signatory, and Tax Matters Member. Further, at all relevant times, Defendant
21  Williams was a founding member of The Neptunes and holds a fifty percent (50%)
22  ownership interest in The Neptunes Entities. Upon information and belief, Defendant
23  Williams is the managing member of The Neptunes Entities.

24      56.    Pursuant to the Operating Agreement, Defendant Williams' role as the
25  managing member, sole authorized signatory, and Tax Matters Member required him to
26  exercise control over the Company's financial reporting, books and records, and
27  distributions, which included monthly and annual reporting of the same to Plaintiff
28

thereby owing Plaintiff the fiduciary duties of loyalty, care, good faith, and full and fair disclosure with respect to the Company's affairs and revenues.

57.    Notwithstanding these fiduciary duties and the express requirements of the Operating Agreement, Defendant Williams failed and refused to provide Plaintiff with monthly income-and-expense statements, prompt copies of third-party royalty statements, annual financial statements, and ongoing access to books and records, despite Plaintiff's repeated requests for the same.

58.    As a direct and proximate result of Defendant Williams' breaches, Plaintiff has been deprived of the information necessary to verify royalties and distributions, to detect and challenge any misallocation or diversion of revenues, and to evaluate buyout proposals and other transactions affecting his membership interest in the Company

59.    Upon information and belief, by virtue of his role as managing partner of The Neptunes Entities, Defendant Williams owed fiduciary duties to Plaintiff in connection therewith and in relation to revenues generated in connection with The Neptunes.

60.    Upon information and belief, Defendant Williams breached his fiduciary duties as managing member of The Neptunes Entities by refusing to honor Plaintiff's entitlements under The Neptune Entities' operating agreement and the Arrangement, denying Plaintiff his rightful publishing share and share of record royalties, and wrongfully taking full credit for Plaintiff's contributions to The Neptunes without proper attribution or compensation. As a direct and proximate result of Defendant Williams' breaches of fiduciary duty, Plaintiff has suffered substantial monetary damages, including unpaid or underpaid royalties, touring income, and merchandise and trademark revenues reasonably estimated in the hundreds of thousands of dollars or more, as well as consequential harm, including loss of transparency and control over his membership interest and the costs and expenses of engaging professionals and counsel to investigate and obtain information and payments that should have been provided in the ordinary course of business.

61.    Further, upon information and belief, Defendant Williams engaged in self-dealing, concealed material information, and, upon information and belief, diverted revenues owed to Plaintiff.  Such willful, fraudulent, and malicious conduct warrants the imposition of punitive damages.

## COUNT II

### <u>Accounting</u>

### (Against N.E.R.D. Music, LLC)

62.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 61 as though fully set forth herein.

63.    By virtue of Defendant Williams' role as managing member, sole authorized signatory, and Tax Matters Member of the Company, Defendant Williams has occupied a position of trust and control over Company finances, records, and revenues, and owes Plaintiff contractual and fiduciary duties to provide accurate financial information, accounting, and access to books and records pursuant to the Operating Agreement.

64.    Defendant Williams' duties include, without limitation, providing monthly income-and-expense statements, prompt copies of third-party royalty statements, annual financial statements, and ongoing access to all Company books and records, which constitute a duty to render full and complete accounting to Plaintiff.

65.    The financial affairs of the Company—including but not limited to royalty streams from sound recordings and publishing, touring income, merchandise and trademark revenues, synchronization and brand-collaboration income, and related distributions—are complex, span many years, and involve numerous third-party contracts and royalty sources that are uniquely within Defendant Williams' control and knowledge.

66.    Plaintiff has been denied the very financial statements, royalty statements, ledgers, bank records, and other documentation needed to determine what sums are owed, thereby rendering Plaintiff unable to ascertain the precise balance due to him without a formal, Court-supervised accounting, and Plaintiff lacks an adequate remedy at law to obtain a complete and accurate determination of monies owed.

COMPLAINT

67.    As a direct result of Defendant Williams' failure and refusal to provide the required financial information and accounting, Plaintiff has been deprived of transparency into the Company's finances, is unable to verify the correctness of royalties and distributions received and reasonably believes that substantial additional sums are owing but undisclosed.

## COUNT III

### Accounting

### (Against Neptunes, LLC/Neptunes LLC)

68.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 67 as though fully set forth herein.

69.    As a member of The Neptunes Entities with no less than a fifty percent (50%) ownership interest, Plaintiff is entitled to a comprehensive accounting of all financial activities, revenues, and distributions related to The Neptunes.

70.    Plaintiff has been denied the very financial statements, royalty statements, ledgers, bank records, and other documentation needed to determine what sums are owed, thereby rendering Plaintiff unable to ascertain the precise balance due to him without a formal, Court-supervised accounting, and Plaintiff lacks an adequate remedy at law to obtain a complete and accurate determination of monies owed.

71.    As a direct result of Defendant Williams' failure and refusal to provide the required financial information and accounting, Plaintiff has been deprived of transparency into The Neptunes Entities' finances and is unable to verify the correctness of royalties and distributions received and reasonably believes that substantial additional sums are owing but undisclosed.

## COUNT IV

### Declaratory Relief

### (Against all Defendants)

72.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 71 as though fully set forth herein.

COMPLAINT

73.     Plaintiff seeks declaratory relief to resolve an actual, ongoing controversy concerning the Parties' respective rights and obligations under the Operating Agreement and N.E.R.D. related revenue streams, The Neptunes Entities and The Neptunes-related revenue streams, and the revenue streams related to the Defendant Entities.

74.     An actual, present controversy of sufficient immediacy and reality exists between Plaintiff and Defendant Williams regarding, among other things: (a) Plaintiff's rights to receive financial information, books and records, royalty statements, and annual financial statements under the Operating Agreement and as related to The Neptunes Entities and the Defendant Entities; (b) Plaintiff's entitlement to specified percentage interests therein; and (c) Defendant Williams' authority and obligations, as managing member of The Neptunes Entities; managing member, sole authorized signatory, and Tax Matters Member of the Company, with an obligation to comply with the Operating Agreement and to account for and pay revenues derived from N.E.R.D.'s commercial activities to Plaintiff; and as sole owner managing member of the Defendant Entities

75.     A judicial declaration of the Parties' respective rights and obligations under the Operating Agreement, The Neptunes Entities operating agreement, and the Defendant Entities' operating agreements, including, without limitation, Plaintiff's information and accounting rights, his economic interests in defined revenue categories, and Defendant Williams' duties and authority as managing member of the Company, The Neptunes Entities, and the Defendant Entities' will resolve the uncertainty and controversy between the parties and guide their future conduct.

76.     Entry of declaratory relief will clarify whether Defendant Williams was and is obligated to provide specific categories of financial information and payments going forward, thereby avoiding further disputes, preventing a multiplicity of actions, and stabilizing the Parties' legal relationship under the Operating Agreement, The Neptunes Entities' operating agreement, and the Defendant Entities' operating agreements.

/ / /

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

      1.    For compensatory damages in an amount to be proven at trial, including but not limited to unpaid or underpaid royalties, touring income, merchandise and trademark revenues, and other proceeds related to the Company and The Neptunes Entities, wrongfully withheld or misallocated.

      2.    For damages according to proof for breach of fiduciary duty under the Operating Agreement and the Neptunes Entities operating agreement.

      3.    For punitive damages for breach of fiduciary duty under the Operating Agreement and the Neptunes Entities operating agreement

      4.    For equitable relief on the accounting cause of action, including: (a) a full and complete accounting of all revenues, expenses, and distributions relating to the Company and the Neptunes Entities.

      5.    For a judicial declaration of the parties' respective rights and obligations under the Operating Agreement, including, without limitation, (a) Plaintiff's rights to financial information, books and records, and royalty and financial statements; (b) Plaintiff's percentage and category-based interests in "Touring and Other Income," "Merchandise and Trademark Income," and other defined revenue streams; and (c) Defendant Williams' duties and authority as managing member, sole authorized signatory, and Tax Matters Member to cause N.E.R.D. Music, LLC to comply with those obligations.

      6.    For a judicial declaration of the Parties' respective rights and obligations under The Neptunes Entities operating agreement.

      7.    For a judicial declaration of the Parties' respective rights and obligations under the Defendant Entities' operating agreements.

      8.    For pre-judgment and post-judgment interest at the maximum rate allowed by law.

9.    For an award of Plaintiff's costs of suit, including reasonable attorneys' fees, expert fees, and accounting/audit costs to the extent permitted by law or contract.

10.    For such other and further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 28(b) of the *Federal Rules of Civil Procedure*, Plaintiff requests a jury trial of all issues that may be tried to a jury in this action.


DATED:  January 23, 2026                **MUNCK WILSON MANDALA, LLP**


By:  /s/ *Brent J. Lehman*
     Brent J. Lehman
     Dina Ovsepian
     ***Attorneys for Plaintiff***
     CHARLES EDWARD HUGO
     p/k/a CHAD HUGO