Edwin F. McPherson – State Bar No. 106084
emcpherson@mcpherson-llp.com
Gabriel Henriquez – State Bar No. 289007
ghenriquez@mcpherson-llp.com
**McPHERSON LLP**
1900 Avenue of the Stars
25th Floor
Los Angeles, CA 90067
Tel:(310)553-8833
Fax:(310)553-9233

Attorneys for Defendants PHARRELL WILLIAMS and TALAMASCA, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

CHARLES EDWARD HUGO p/k/a CHAD HUGO, an individual;

Plaintiff,

vs.

PHARRELL WILLIAMS, an individual; N.E.R.D. MUSIC, LLC, a Delaware limited liability company; NEPTUNES, LLC/NEPTUNES LLC, a Delaware limited liability company; CH & PW, INC., a Virginia corporation; PW & CH, INC., a Virginia corporation; PW BRANDING, INC., a California corporation; PW IP HOLDINGS, LLC, a Delaware limited liability company; TALAMASCA, INC., a Delaware corporation; and DOES 1-10 inclusive,

Defendants.

CASE NO. 2:26-cv-00746-AB-PD

**(1) NOTICE OF MOTION AND MOTION OF DEFENDANTS PHARRELL WILLIAMS AND TALAMASCA, INC. TO DISMISS SECOND AMENDED COMPLAINT (Rule 12(b)(6)) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT (Rule 12(e))**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES**

**[Declarations of Edwin F. McPherson and Gabriel Henriquez; and Proposed Order filed concurrently herewith]**

Date: November 6, 2026
Time: 10:00 a.m.
Ctrm: 7B

Hon. André Birotte Jr.

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD IN THE CAPTIONED ACTION:

PLEASE TAKE NOTICE that, on November 6, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Hon. André Birotte Jr., United States District Judge Presiding, in Courtroom 7B of the Felicitas and Gonzalo Mendez United States Courthouse, 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Defendants Pharrell Williams and Talamasca, Inc. (hereinafter collectively “Defendants”) will, and by this Notice hereby do, move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss “Counts” V and VI of the Second Amended Complaint (“SAC”). If Counts V and VI are dismissed, Defendants further request that the Court decline supplemental jurisdiction over Counts I through IV of the SAC, pursuant to 28 U.S.C. Section 1367(c)(3), and dismiss those state-law claims without prejudice.

Alternatively, if the Court does not dismiss Counts V and VI, Defendants move this Court, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, for an Order requiring Plaintiff to provide a more definite statement identifying the copyrights whose ownership he asks this Court to adjudicate – including whether each claimed copyright concerns a musical composition, a sound recording, or both – and the factual basis for his claimed authorship and ownership of each.

**LOCAL RULE 7-3 STATEMENT**: This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 29, 2026, regarding the substance of this Motion. Declaration of Gabriel Henriquez, ¶ 2.

This Motion is based upon the following grounds:

(1) The SAC fails to identify the copyrighted works whose ownership Plaintiff asks this Court to adjudicate;

(2) The SAC deletes both the eight previously-identified works and the definition of “Copyrighted Works” that appeared in the First Amended Complaint, while Counts V and VI continue to depend upon that now-undefined capitalized term;

(3) The SAC fails to aver, as to the one "work" that Plaintiff identifies or any other particular work, whether Plaintiff claims ownership of the musical composition, the sound recording, or both, notwithstanding that those are separate copyrighted works under the Copyright Act;

(4) The SAC fails to aver the specific copyrightable expression that Plaintiff contends to have contributed to any identified work;

(5) The SAC fails to aver nonconclusory facts supporting joint authorship under the Ninth Circuit's Aalmuhammed factors, including objective manifestations of mutual intent as to any particular work and facts bearing upon Hugo's control over its creation;

(6) The SAC fails to aver sufficient facts supporting Plaintiff's claimed present ownership of any sound recording copyright, including with respect to the sole recording that it identifies;;

(7) Count V fails independently against Talamasca because the SAC avers an adverse copyright-ownership controversy only as to Defendant Williams;

(8) Plaintiff's demand for "proper credit and attribution" does not state an independent federal Copyright Act claim as to musical compositions or sound recordings;

(9) Count VI does not arise under federal copyright law, and cannot support jurisdiction under 28 U.S.C. Section 1338(a);

(10) Upon the dismissal of Counts V and VI, no claim within this Court's original federal jurisdiction will remain, and complete diversity is absent in this case;

(11) The Court should therefore decline supplemental jurisdiction over Counts I through IV, pursuant to 28 U.S.C. Section 1367(c)(3); and

(12) Alternatively, the SAC is so vague and ambiguous with respect to the copyrights placed at issue that Defendants cannot reasonably prepare a response, and Plaintiff should be ordered under Rule 12(e) to properly set forth a short and plain statement of the claim.

This Motion is further based upon this Notice, the attached Memorandum of Points and Authorities, the Declarations of Edwin F. McPherson and Gabriel Henriquez, the pleadings and papers on file in this action of which this Court is requested to take judicial notice, and such oral and documentary evidence as may be presented at the hearing of this Motion.

Dated: October 6, 2026

Edwin F. McPherson
Gabriel Henriquez
**McPHERSON LLP**

By: /s/ *Edwin F. McPherson*
EDWIN F. McPHERSON
Attorneys for Defendants
PHARRELL WILLIAMS
and TALAMASCA, INC.

# TABLE OF CONTENTS


PAGE

I. INTRODUCTION . . . -10-

A. PREFATORY STATEMENT . . . -10-

B. STATEMENT OF FACTS . . . -14-

1. By March Of 2022, Hugo Already Was Asserting Vague Intellectual-Property, Publishing, And Credit Disputes. -14-

2. The Parties Then Tolled Those Broadly-Defined IP (And Other) Claims For Three Years, Through Eight Successive Tolling Agreements, And Plaintiff Still, To This Day, Has Not Been Able To Figure Out Which Works He Supposedly Co-Authored . . . -14-

3. Hugo's Original Complaint Did Not Even Contain A Copyright Claim For Relief, And Certainly Did Not Identify Any Specific Copyrighted Works. . . . -15-

4. The FAC Added Federal Copyright Claims, And Identified Eight Works, Plus A Sweeping Residual Category. . . . -15-

5. The SAC Deleted All Of The Eight Works, Added One, And Deleted The "Copyrighted Works" Definition, Leaving The SAC Hopelessly Vague.. . . . -16-

II. DISCUSSION . . . -17-

A. LEGAL STANDARDS . . . -17-

B. COUNT V FAILS TO IDENTIFY THE COPYRIGHTED WORKS WHOSE OWNERSHIP HUGO REQUESTS THE COURT TO ADJUDICATE. . . . -18-

1. Identification Of The Relevant "Works" Is Fundamental To A Joint-Authorship Claim. . . . -18-

2. The Pleading History Makes The Deficiency Significant. . . . -19-

C. THE SAC ALSO FAILS TO IDENTIFY WHETHER HUGO CLAIMS OWNERSHIP OF *COMPOSITIONS*, OF *SOUND RECORDINGS*, OR OF BOTH, WITH RESPECT TO ANY PARTICULAR WORK. . . . -19-

1. A Musical *Composition* And A *Sound Recording* Are Separate Copyrighted Works. . . . -19-

2. The Facts Necessary To Plead Authorship Differ Significantly, Depending Upon Which Copyright Is Claimed By Hugo. . . . -21-

3. Sound Recording Ownership Raises Additional Chain-Of-Title Questions That The SAC Ignores. . . . . . -21-

4. Plaintiff's Use Of The Term "Albums" Does Not Make Things More Clear. . . . . -22-

D. EVEN AS TO "U GOTTA," THE SAC DOES NOT PLAUSIBLY PLEAD JOINT AUTHORSHIP. . . . . -23-

E. COUNT V INDEPENDENTLY FAILS AGAINST TALAMASCA.. . . . . -24-

F. FAILURE TO PROVIDE "CREDIT AND ATTRIBUTION" DOES NOT CREATE AN INDEPENDENT FEDERAL COPYRIGHT CLAIM.. . . . . -25-

G. COUNT VI'S ACCOUNTING CLAIM DOES NOT ARISE UNDER FEDERAL COPYRIGHT LAW. . . . . -26-

H. THE JURISDICTIONAL HISTORY DEMONSTRATES THAT THE COPYRIGHT OWNERSHIP THEORY IS NOW THE ONLY POSSIBLE FEDERAL ANCHOR. . . . . -26-

1. Neither "Credit" Nor "Accounting" Can Preserve Federal Question Jurisdiction.. . . . . -27-

2. This Court Should Decline Supplemental Jurisdiction Over Counts I - IV. . . . . -28-

I. PLAINTIFF'S REPEATED OPPORTUNITIES TO FORMULATE THESE CLAIMS WARRANT STRICT LIMITS ON ANY FURTHER AMENDMENT . . . . . -29-

J. ALTERNATIVELY, THE COURT SHOULD REQUIRE A MORE DEFINITE STATEMENT UNDER RULE 12(e) . . -30-

K. THE SAC'S FAILURE TO IDENTIFY THE COPYRIGHTS AND THEIR EXISTING OWNERS PREVENTS THE COURT AND DEFENDANTS FROM DETERMINING WHETHER F.R.C.P. 19 REQUIRES JOINDER. . . . . -30-

L. THERE ARE ALSO STATUTE OF LIMITATIONS IMPLICATIONS BY VIRTUE OF HUGO'S FAILURE TO IDENTIFY PARTICULAR WORKS AND OTHER CO-AUTHORS. . . . . -32-

III. CONCLUSION. . . . . -33-

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES


Aalmuhammed v. Lee,
202 F.3d 1227 (9th Cir. 2000). . . . . -23-, -24-

Armes v. Post,
No. 2:20-cv-03212-ODW (PJWx),
2020 WL 6136785 (C.D. Cal. Oct. 19, 2020). . . . . -24-, -31-, -32-

Ashcroft v. Iqbal,
556 U.S. 662 (2009) . . . . . -17-, -23-

Ashton-Tate Corp. v. Ross,
916 F.2d 516 (9th Cir. 1990). . . . . -20-

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) . . . . . -17-

Bureerong v. Uvawas,
922 F. Supp. 1450 (C.D. Cal. 1996) . . . . . -17-, -30-

Carnegie-Mellon Univ. v. Cohill,
484 U.S. 343 (1988) . . . . . -28-

Caterpillar Inc. v. Lewis,
519 U.S. 61 (1996) . . . . . -27-

Community for Creative Non-Violence v. Reid,
490 U.S. 730 (1989) . . . . . -22-

Edward B. Marks Music Corp. v. Jerry Vogel Music Co., Inc.,
140 F.2d 266 (2d Cir. 1944) . . . . . -23-

Fayer v. Vaughn,
649 F.3d 1061 (9th Cir. 2011). . . . . -17-

Foman v. Davis,
371 U.S. 178 (1962) . . . . . -29-

Garcia v. Google, Inc.,
786 F.3d 733 (9th Cir. 2015). . . . . -18-

Johnson v. Columbia Properties Anchorage, LP,
437 F.3d 894 (9th Cir. 2006). . . . . -27-

Kanter v. Warner-Lambert Co.,
265 F.3d 853 (9th Cir. 2001). . . . . -27-

Khoja v. Orexigen Therapeutics, Inc.,
899 F.3d 988 (9th Cir. 2018). . . . . -14-

Kwan v. SanMedical Int'l.,
854 F.3d 1088 (9th Cir. 2017). . . . . -17-

Makah Indian Tribe v. Verity,
910 F.2d 555 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

MedImmune, Inc. v. Genentech, Inc.,
549 U.S. 118 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

Merchant v. Levy,
92 F.3d 51 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

Morrill v. Smashing Pumpkins,
157 F. Supp. 2d 1120 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

Newton v. Diamond,
388 F.3d 1189 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -21-

Oddo v. Ries,
743 F.2d 630 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . -13-, -26-, -28-, -31-

Quezambra v. United Domestic Workers of Am.,
445 F. Supp. 3d 695 (C.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Ramirez v. County of San Bernardino,
806 F.3d 1002 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.,
531 F.3d 962 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Roley v. New World Pictures, Ltd.,
19 F.3d 479 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-

Shermoen v. United States,
982 F.2d 1312 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

Shropshire v. Canning,
No. 10-CV-01941-LHK, 2011 WL 90136, at *3–5(N.D. Cal. Jan. 11, 2011) . . . . . -31-

Starr v. Baca,
652 F.3d 1202 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Swierkiewicz v. Sorema N.A.,
534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.,
446 F. Supp. 2d 1164 (E.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . -25-, -28-

United Mine Workers v. Gibbs,
383 U.S. 715 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-

VMG Salsoul, LLC v. Ciccone,
824 F.3d 871 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

Yount v. Acuff Rose-Opryland,
103 F.3d 830 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

Zuill v. Shanahan,
80 F.3d 1366 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-, -28-, -33-

**STATUTES**

17 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-, -20-, -21-, -22-, -25-
17 U.S.C. § 102(a)(2) and (7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
17 U.S.C. § 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
17 U.S.C. § 106A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
17 U.S.C. § 106A(a) and (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
17 U.S.C. § 201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-
17 U.S.C. § 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-, -22-
17 U.S.C. § 507(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-
28 U.S.C. § 1338(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-, -26-
28 U.S.C. § 1367(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-, -28-

**RULES**

Fed. R. Civ. P. 12(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
Fed. R. Civ. P. 19(a)(1)(A)-(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-
Fed. R. Civ. P. 19(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

**OTHER AUTHORITIES**

U.S. Copyright Office, *Copyright Registration for Sound Recordings*,
Circular 56, at 2 (rev. Mar. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -22-
U.S. Copyright Office, *Copyright Registration of Musical Compositions and Sound Recordings*, Circular 56A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. PREFATORY STATEMENT

Although Plaintiff Charles Hugo ("Hugo") claims to have co-authored multiple "works" for which Defendants did not give him credit, he cannot, after years of dispute, three years of contractual tolling, and three successive complaints, identify a single specific composition or sound recording he claims to have co-authored, save for one. The progression is remarkable.

The SAC repeatedly insists that these copyrights are numerous. Paragraph 57 alleges "substantial copyright interests" in both musical compositions and sound recordings; Paragraph 59 alleges "numerous joint works"; and Paragraph 60 claims co-ownership of "the copyrights in those works." Yet, when Paragraph 62 finally identifies the copyrighted works whose ownership Hugo asks this Court to adjudicate, it names only one: "U Gotta" by EarthGang, with the open-ended phrase "including but not limited to."

By March 18, 2022, Hugo was already represented by litigation counsel (his second lawyer of six), who accused Defendants of denying Hugo publishing rights, failing to provide producer credit, taking credit for Hugo's contributions without attribution or compensation, and violating Hugo's asserted Neptunes-related intellectual-property rights. Hugo's counsel specifically complained about the Rosalía album and an alleged effort to remove Hugo from a Pusha T project, and he threatened litigation.

Effective January 3, 2023, at Hugo's counsel's request, Hugo, Defendants, and others entered into a tolling agreement. By that agreement, the parties tolled a broadly-defined universe of "Claims," expressly including claims relating to intellectual-property rights, production/publishing credit, The Neptunes, N.E.R.D., and musical tracks and albums written, performed, or produced by Hugo. The parties ultimately extended that tolling through January 24, 2026.

Hugo thus had approximately three years during which the limitations clock was stopped while he and his many counsel "investigated" and formulated whatever claims

they believed he possessed. Yet, when Hugo finally filed suit on January 23, 2026, **he did not assert a single copyright claim**.

In his original Complaint, Hugo invoked only **diversity jurisdiction**[1], and asserted four claims for relief: breach of fiduciary duty, two state-law accounting claims, and declaratory relief concerning two LLC operating agreements. Although Hugo described nearly fifty Neptunes recording sessions between 2019 and 2021, and complained generally of lost revenue, he did not assert a single copyright claim, including any for copyright co-ownership in the Complaint.

It was not until the filing of the First Amended Complaint ("FAC") that there suddenly appeared a "Count" for declaratory judgment of copyright ownership and another one for an accounting of purported copyright profits, along with a new assertion of federal question jurisdiction. In the FAC, Hugo identified eight titles, variously-described as "musical works," "musical tracks," and "albums."

However, in a footnote to Paragraph 62 (n.6), Hugo defined the term "Copyrighted Works," which he used throughout the FAC, to encompass those eight works, but also: "all other musical compositions and sound recordings [allegedly] created" by Hugo and Williams as The Neptunes between 2019 and 2021, and still other unspecified Neptunes works for which Hugo claimed insufficient credit or compensation.

The SAC, rather than clarifying these already-vague co-ownership claims in the FAC, actually makes them less definite. Not one of the eight "musical works," "musical tracks," and "albums" that were identified in the FAC is identified in the SAC. Instead, the SAC identifies only **one** purported work – "U Gotta," by EarthGang – which was not among the eight works previously identified in the FAC. Even then, Paragraph 62 describes "U Gotta" merely as one example among potentially countless unidentified "musical tracks and albums" to which Hugo allegedly "contributed copyrightable

---

[1] Although Hugo initially filed this suit based on diversity jurisdiction, there was and is no diversity jurisdiction in this case, as discussed more fully below.

expression as a joint author," using the open-ended phrase "including but not limited to." It does not identify what, if any, copyrightable expression Hugo allegedly contributed.

The FAC's definition of "Copyrighted Works" also has been removed; yet, Counts V and VI continue repeatedly to demand adjudication of Hugo's ownership of the now-undefined "Copyrighted Works," together with "proper credit and attribution," royalties, and an accounting of revenues supposedly derived therefrom. The pleadings therefore have become **less definite, not more**, the progression summarized as follows:

**Complaint:** No copyright claim and no identified work.

**FAC:** Eight identified works plus an unidentified residual universe.

**SAC:** The eight identified works and the definition of "Copyrighted Works" are deleted; one new work appears, followed by "including but not limited to" language indicating that still other unidentified works supposedly exist (**with no reference to what it is that Hugo supposedly did to assist in the creation of the "musical track" or "album"**).

The ambiguity goes deeper. Paragraph 57 generically alleges that Hugo possesses copyright interests in both "musical compositions and sound recordings." However, the SAC thereafter indiscriminately uses such terms as "musical works," "musical tracks," "albums," "works," "copyrights," and "Copyrighted Works" without identifying, as to "U Gotta," or any other particular work, whether Hugo claims ownership of the copyright(s) in the underlying compositions, the sound recordings, or both.

Those are legally distinct copyrighted works with potentially different authors, different owners, different chains of title, and different facts relevant to authorship. A *composition* generally consists of the underlying music and lyrics; authorship of a *sound recording* may arise from copyrightable performance or production contributions, and may present entirely different ownership and chain-of-title questions. Although Paragraph 57 generically asserts interests in both categories, the SAC does not say which copyright Hugo claims to own in "U Gotta" (or any other work) – the composition, the

sound recording, or both – much less identify the particular copyrightable expression he claims to have contributed to either.

That information is certainly not something that is uniquely within Defendants' possession. Hugo may need discovery to determine revenue, but he does not need discovery to know which compositions he supposedly wrote, which sound recordings he supposedly performed on or creatively produced, what copyrightable expression he claims to have contributed, or which copyrights he contends to own. The question is not whether Defendants could attempt to reconstruct every work on which Hugo ever participated. The question is which of those works Hugo himself contends gives rise to a presently-disputed copyright ownership interest. Only Hugo can define the scope of the judicial declaration that he seeks.

Yet, after years of dispute, three years of tolling, and three successive pleadings, those basic facts remain unidentified. In fact, as incomprehensible as it is, it appears that **Hugo has no idea which compositions or sound recordings he supposedly authored** – even though he claims to have been there, right by Defendants' side, the whole time.

The additional relief that Hugo packages with the ownership claim cannot save the pleading (or federal question jurisdiction). There is no general federal Copyright Act claim for failure to provide producer or songwriter ***credit***. Moreover, controlling Ninth Circuit authority expressly holds that a copyright co-owner's obligation to provide an ***accounting*** does not derive from the Copyright Act, and does not independently create federal question jurisdiction under 28 U.S.C. Section 1338(a). Oddo v. Ries, 743 F.2d 630, 633 and n.2 (9th Cir. 1984).

Thus, the copyright ownership claim is the only potentially viable federal anchor. If Count V is dismissed, neither credit nor accounting independently presents a federal question, complete diversity is absent, and the SAC itself invokes only supplemental jurisdiction over Counts I through IV.

The Court should therefore dismiss Counts V and VI, and decline supplemental jurisdiction over the remaining claims. Alternatively, at a minimum, after so many years

of dispute, tolling, and three successive pleadings, Hugo should be required under Rule 12(e) to disclose – once and for all – every copyright whose ownership he asks this Court to adjudicate, whether each is a musical composition, a sound recording, or both, and the factual basis upon which he claims authorship and present ownership of each.

## B. STATEMENT OF FACTS

### 1. By March Of 2022, Hugo Already Was Asserting Vague Intellectual-Property, Publishing, And Credit Disputes.

The issues now repackaged as federal copyright claims are not new. They were being asserted by Plaintiff's counsel nearly four years before the filing of the SAC. Declaration of Edwin F. McPherson ("McPherson Decl."), ¶¶ 2–4. The SAC itself expressly invokes that March 18, 2022 letter as placing Williams "on notice of Plaintiff's claims." SAC ¶ 43. Because Plaintiff thus relies upon the letter in pleading the existence and history of the controversy, the Court may consider the letter under the incorporation-by-reference doctrine. *See* Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002–03 (9th Cir. 2018).

This letter does more than the SAC lets on. Hugo's then counsel asserted that the parties had agreed to production and publishing splits governing their 2019-2021 work, he accused Williams and his team of failing to provide Hugo the publishing rights to which he was entitled, and he asserted that Williams intended to take credit for Hugo's contributions without proper attribution or compensation. McPherson Decl., ¶ 2, Exh. A.

Thus, years before the SAC was filed, Hugo already was represented by litigation counsel asserting the same general subject matter that is now repackaged as copyright ownership, credit, and accounting claims. What has never happened, at any point in the four-plus years since, is a specific identification of the copyrights themselves.

### 2. The Parties Then Tolled Those Broadly-Defined IP (And Other) Claims For Three Years, Through Eight Successive Tolling Agreements, And Plaintiff Still, To This Day, Has Not Been Able To Figure Out Which Works He Supposedly Co-Authored.

In Paragraph 55 of the SAC, Hugo alleges that "[o]n or about March 31, 2023, Plaintiff's then-counsel requested that the Parties, the Company, The Neptunes Entities, and the Defendant Entities enter into a tolling agreement (the "Tolling Agreement"), so that the Parties could pursue negotiations while preserving all rights. "The Tolling Agreement expires (sic) on January 24, 2026." As a matter of fact, there were eight successive tolling agreements (not one), and the tolling period commenced on January 3, 2023 (not March 31, 2023).

Hugo therefore bargained for, and received, more than three years during which the limitations clock was stopped, precisely so that he could identify and formulate his intellectual property claims. He had counsel throughout; in fact, he has had six separate lawyers representing him at various times since 2021. Yet, he could not – after years of discussions, and more than three additional years of tolling – identify the "works" that he supposedly co-authored, or even whether those "works" were compositions or sound recordings, and what it is that he did on each such work to qualify as a co-author.

**3. <u>Hugo's Original Complaint Did Not Even Contain A Copyright Claim For Relief, And Certainly Did Not Identify Any Specific Copyrighted Works</u>.**

After years of discussion and more than three years of tolling, Hugo filed his original Complaint under diversity jurisdiction, without a single claim related to copyright, and did not identify a single copyrighted work whose ownership he contended was in dispute. McPherson Decl., ¶ 5.

**4. <u>The FAC Added Federal Copyright Claims, And Identified Eight Works, Plus A Sweeping Residual Category</u>.**

On February 12, 2026, three weeks after the filing of the original Complaint, Hugo filed the FAC. The FAC added Counts V and VI, declaratory judgment of copyright ownership, and accounting for copyright profits. Additionally, the FAC included an entirely new jurisdictional theory, *i.e.*, federal question jurisdiction. FAC ¶¶ 4-7, 92-111.

In Footnote 6 of his FAC, Hugo alleged that he contributed copyrightable

expression as a joint author to what he defined as "Copyrighted Works," which included eight specific works: "Motomami," by Rosalía, "La Combi Versace," by Rosalía, "Cash In Cash Out," "Love Is Not Written," "Pure," "Real One," featuring Latto, "Lost and Found," featuring Tyler the Creator; and "Freestyle," featuring Tyler the Creator, along with "all musical compositions and sound recordings created by Plaintiff and Defendants Williams while operating as The Neptunes between 2019 and 2021, and all other musical compositions and sound recordings created by Plaintiff as part of The Neptunes for which he has not received proper credit or compensation."

That definition was itself objectionable enough; it swept in an unbounded residual category defined by Hugo's own subjective (albeit unspecific) dissatisfaction with his credit and compensation. However, at least the FAC attempted to describe the works to which the newly-pled copyright claims applied. Defendants could read the FAC and identify at least eight songs.

**5. <u>The SAC Deleted All Of The Eight Works, Added One, And Deleted The "Copyrighted Works" Definition, Leaving The SAC Hopelessly Vague</u>.**

The SAC retreats from the FAC's formulation entirely. Paragraph 62 of the SAC now alleges only that, "Among the musical works to which Plaintiff contributed copyrightable expression as a joint author, along with Defendant Williams, are musical tracks and albums, including but not limited to "U Gotta," by Earthgang." The previously-identified eight works of the FAC are gone – all of them.

The FAC's definition of "Copyrighted Works" is also gone, leaving a crucial defined term without a definition. Counts V and VI continue to depend, repeatedly and exclusively, upon precisely that now-undefined term. SAC ¶¶ 94–100, 103–111. So does the Request for Relief. SAC, Prayer ¶¶ 8–10. As such, the SAC asks this Court to declare Hugo the co-owner of a category of "works," *i.e.*, those identified as "Copyrighted Works," with no reference to be found as to what that means. Quite clearly, at this stage in the multi-year process, Hugo appears to have no idea which "works" he

supposedly co-authored, or whether those "works" are compositions or sound recordings.

## II. DISCUSSION

### A. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for failure to state a claim upon which relief can be granted. Dismissal is proper when the complaint lacks either a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. Quezambra v. United Domestic Workers of Am., 445 F. Supp. 3d 695, 701 (C.D. Cal. 2020). In resolving a Rule 12(b)(6) motion, the Court accepts well-pled factual allegations as true, construes them in the light most favorable to the plaintiff, and draws reasonable inferences in the plaintiff's favor. Id. However, the Court need not accept legal conclusions cast as factual allegations, conclusory assertions, or unwarranted inferences. Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011). The Court may therefore identify allegations that are merely conclusory, disregard them, and then determine whether the remaining well-pled facts plausibly establish an entitlement to relief. Kwan v. SanMedical Int'l., 854 F.3d 1088, 1096 (9th Cir. 2017).

Rule 8(a)(2) requires that a complaint contain sufficient factual allegations to give the defendant fair notice of the claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Labels, conclusions, and formulaic recitations are insufficient. A complaint must allege facts allowing a reasonable inference of liability. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Ninth Circuit likewise requires sufficient underlying facts both "to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rule 12(e) permits a more definite statement where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). *See* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). A Rule 12(e) motion is properly granted where the pleading's ambiguity is such that the defendant cannot frame a responsive pleading or determine the issues requiring a response. Bureerong v. Uvawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).

A defendant therefore cannot be compelled to defend itself effectively against a claim of title to property that the plaintiff refuses to identify. This is not a demand that Hugo plead his evidence; it is a demand that he identify the property as to which he seeks a judgment establishing ownership.

### B. COUNT V FAILS TO IDENTIFY THE COPYRIGHTED WORKS WHOSE OWNERSHIP HUGO REQUESTS THE COURT TO ADJUDICATE.

#### 1. Identification Of The Relevant "Works" Is Fundamental To A Joint-Authorship Claim.

The Copyright Act defines a joint work as one prepared by two or more authors intending that their contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. § 101. Every operative word of that definition is work-specific. Whether two people intended their contribution to merge, whether the resulting product is a unitary whole, and whether each contribution is independently-copyrightable, are all questions that can only be answered as to a particular work, and not collectively. The Ninth Circuit accordingly regards identification of the relevant work as foundational to the joint-authorship inquiry.

In Garcia v. Google, Inc., 786 F.3d 733, 742 (9th Cir. 2015) (en banc), the Court explained that determining the "work" is the first step in analyzing joint authorship. Richlin v. Metro-Goldwyn-Mayer Pictures, Inc., 531 F.3d 962, 968 (9th Cir. 2008), similarly asks what "work" must be examined for purposes of determining authorship.

The SAC provides no answer whatsoever. Does Hugo claim copyright ownership in "U Gotta" only? In every Neptunes composition created from 2019 through 2021? In every sound recording on which Hugo performed? In every sound recording that Hugo allegedly co-produced? In every Neptunes work created over the parties' decades-long relationship? In released works? In unreleased works?

The phrase "including but not limited to" implies that "U Gotta" is not the complete universe of claimed "works." That phrase is not a pleading convenience. It is

the whole architecture of the claim. It permits Hugo to litigate one "work" through the pleadings stage, and then, later, to assert co-ownership of whatever additional "works" he decides to claim, without giving the Defendants the slightest hint of whether they have to disprove co-authorship of one "work" or 500 "works." Simply stated, Rule 8 mandates that Defendants do not have to guess.

**2. The Pleading History Makes The Deficiency Significant.**

This is not Hugo's first pleading; nor is it his first opportunity to articulate his copyright theory. He had two years of dispute, over three years of tolling, an original Complaint, a FAC, and now a SAC. The original Complaint pled no copyright ownership claim. The FAC identified only eight works, and defined a large additional universe. The SAC then **deleted all eight works, included only one, and deleted the definition of "Copyrighted Works."**

Plaintiff therefore has not merely failed to add detail; he has affirmatively *removed* the already vague and broad identifying information that was contained in his earlier pleading. An amended pleading supersedes its predecessor. Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015). Footnote 6 of the FAC is therefore no longer operative, and none of the eight works enumerated in the FAC is identified in the operative SAC as a work whose copyright ownership Hugo asks the Court to adjudicate. The Court should not reconstruct the SAC by importing a previously-rejected specific list of works and a definition that Plaintiff deliberately eliminated.

**C. THE SAC ALSO FAILS TO IDENTIFY WHETHER HUGO CLAIMS OWNERSHIP OF *COMPOSITIONS*, OF *SOUND RECORDINGS*, OR OF BOTH, WITH RESPECT TO ANY PARTICULAR WORK.**

The ambiguity in the SAC goes deeper than a failure to identify specific "songs" at issue. The SAC fails to identify, as to any particular work, whether Plaintiff claims to have co-authored compositions or sound recordings.

**1. A Musical *Composition* And A *Sound Recording* Are Separate Copyrighted Works.**

The Copyright Act separately recognizes compositions (listed as "musical works") and "sound recordings." 17 U.S.C. § 102(a)(2) and (7). The Ninth Circuit has repeatedly enforced that distinction, holding that a sound recording and the composition that it embodies are separate works, with distinct copyrights, frequently owned by different parties. Newton v. Diamond, 388 F.3d 1189, 1191 (9th Cir. 2004); VMG Salsoul, LLC v. Ciccone, 824 F.3d 871, 877 (9th Cir. 2016).

The Copyright Office likewise explains that a musical composition and the sound recording embodying a performance of that composition are **two separate works**. A composition generally consists of the underlying music-melody, rhythm and/or harmony-and any accompanying lyrics. Its authors are the persons who create that musical and lyrical expression. U.S. Copyright Office, *Copyright Registration for Sound Recordings*, Circular 56, at 2 (rev. Mar. 2021); U.S. Copyright Office, **Copyright Registration of Musical Compositions and Sound Recordings**, Circular 56A.

A sound recording is a particular fixed recording of sounds. 17 U.S.C. § 101. Its authorship may arise from *performance* authorship, such as singing or playing an instrument, and/or from *production* authorship, such as creatively capturing, manipulating, mixing, mastering, or editing the sounds embodied in the recording.

In order to be considered a joint author in the Ninth Circuit, each putative joint author must contribute independently-copyrightable expression. Ashton-Tate Corp. v. Ross, 916 F.2d 516, 521 (9th Cir. 1990).

The SAC initially alleges that Hugo has interests in both "musical compositions and sound recordings." SAC ¶ 57. It then abandons that distinction. The pleading thereafter alternates among "musical works," "musical tracks," "albums," "works," "such copyrights," and the undefined "Copyrighted Works." Those terms are not legal substitutes for one another; nor are they consistently used within the same SAC. Finally, the single operative allegation (SAC ¶ 62) manages to use three of them in one sentence, while identifying neither the statutory category nor the nature of the copyright claimed.

///

**2. The Facts Necessary To Plead Authorship Differ Significantly, Depending Upon Which Copyright Is Claimed By Hugo.**

This is not a semantic objection; the choice determines what Hugo must plead and prove. If Hugo claims authorship of the *composition* embodied in "U Gotta," he must identify the copyrightable musical or lyrical expression that he claims to have created, and the facts demonstrating joint authorship of that composition. On the other hand, if Hugo instead claims authorship of the *sound recording*, the relevant inquiry is very different. He must identify the copyrightable *performance* or *production authorship* that he allegedly contributed to the actual master recording.

If Hugo *claims* both copyrights, he must *plead* both. The composition and sound recording are separate works, and joint authorship of one does not establish joint authorship of the other. Newton, *supra*, 388 F.3d at 1191. The SAC does none of this; it alleges only that Hugo "**contributed copyrightable expression**" to unspecified **"musical tracks and albums**." SAC ¶ 62. That conclusory allegation essentially says nothing.

**3. Sound Recording Ownership Raises Additional Chain-Of-Title Questions That The SAC Ignores.**

Authorship and present ownership are also different questions. Even where a performer or producer initially makes a copyrightable contribution to a sound recording, present copyright ownership may depend upon employment status, work-for-hire principles, assignments, recording agreements, producer agreements, and other chain-of-title documents. Defendants do not contend that Hugo must attach or prove his chain-of-title documents at the pleading stage. However, because Hugo seeks a declaration of present ownership of unidentified commercial sound recordings, the SAC must allege sufficient facts to make plausible his claim that he presently owns the copyright interest that he asks the Court to adjudicate.

Under 17 U.S.C. Section 201(b), where a work is validly made for hire, the employer or other person for whom the work was prepared is treated as the author. For commissioned works, however, the statutory work-for-hire requirements of Section 101

must actually be satisfied; a sound recording does not become a commissioned work for hire merely because a contract uses that phrase. *See* 17 U.S.C. §§ 101, 201(b); Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737–41 (1989). The Copyright Office likewise distinguishes performers/producers as potential sound-recording authors from record labels or other entities that may own rights through a work-for-hire relationship or transfer. U.S. Copyright Office, *Copyright Registration for Sound Recordings*, Circular 56, at 3 (rev. Mar. 2021); *see also*, Morrill v. Smashing Pumpkins, 157 F. Supp. 2d 1120, 1126 (C.D. Cal. 2001).

Accordingly, the point is not that a record label necessarily is the author of every commercially-released master; it is not. The point is simply that Hugo cannot leap from: "*I helped produce this track*," to "*I am a copyright co-owner of the sound recording*."

The SAC must identify, at a minimum, what copyrightable creative input Hugo claims to have contributed to each master and allege sufficient facts to make plausible his claim of present ownership (if he makes one). That is particularly important where the sole "work" identified – "U Gotta" – is a commercial recording by **another artist**, EarthGang. The SAC says nothing about Hugo's contribution to the master, who owns it, or what chain of title supposedly leaves Hugo with a present copyright co-interest.

### **4. Plaintiff's Use Of The Term "Albums" Does Not Make Things More Clear.**

The SAC also refers to "albums." An album may contain numerous separate musical compositions and numerous separate sound recordings. It may also include compilational authorship and unrelated visual or textual material. *See* 17 U.S.C. § 101 (defining "compilation" and "collective work").

Saying that Hugo has copyright interests in unidentified "albums" does not tell Defendants whether he claims authorship of *one* composition, *every* composition, one *sound recording*, *every* sound recording, or something else entirely; nor does it even identify the "albums." A federal declaratory judgment cannot sensibly adjudicate copyright title at that level of abstraction.

### D. EVEN AS TO "U GOTTA," THE SAC DOES NOT PLAUSIBLY PLEAD JOINT AUTHORSHIP.

Naming one "song" does not cure the substantive deficiency. Aalmuhammed v. Lee, 202 F.3d 1227 (9th Cir. 2000), makes clear that substantial creative contribution alone does not establish joint authorship. The court considers matters including whether the putative author contributed independently-copyrightable material, whether he/she superintended the work by exercising control, whether he/she made objective manifestations of a shared intent to be the co-authors, and whether the audience appeal of the work turns on both contributions such that "'the share of each in its success cannot be appraised.'" Id. at 1234-35, quoting Edward B. Marks Music Corp. v. Jerry Vogel Music Co., Inc., 140 F.2d 266, 267 (2d Cir. 1944) (Hand, J.) modified by 140 F.2d 268 (2d Cir. 1944).

The SAC alleges, in a conclusory manner, that Hugo "contributed copyrightable expression as a joint author" (SAC ¶ 62), and that an alleged EarthGang interview confirmed that Hugo "contributed copyrightable express [sic] and was removed as an artist" on the track. SAC ¶ 62, n. 6. Those are *conclusions*, not *facts* establishing joint authorship. *See* Iqbal, *supra*, 556 U.S. at 678.

Indeed, the alleged comments by EarthGang suggest that this is a dispute about *credit*, which, as shown below, is not a federal copyright claim at all. The SAC does not say whether Hugo claims that he wrote *music*, wrote *lyrics*, played an instrument, performed on the *master*, programmed sounds that were incorporated into the master, recorded the master, mixed the master, creatively edited or otherwise manipulated the master, or did something else entirely.

In addition, as discussed above, the SAC does not allege whether his claim concerns the composition, the sound recording, or both. It certainly does not aver objective facts showing a mutual intent between Hugo and Williams to be joint authors of the copyright now claimed; nor does it aver facts concerning Hugo's control over the creation of the relevant copyrighted work, an important consideration under

Aalmuhammed.

In Armes v. Post, No. 2:20-cv-03212-ODW (PJWx), 2020 WL 6136785 (C.D. Cal. Oct. 19, 2020), the plaintiff claimed that he was present at a recording session, and that he contributed creative content to the sound recording. His sound-recording claim was nevertheless dismissed because, applying Aalmuhammed, the court found that he had not sufficiently alleged control over the creation of the master – an important consideration in determining joint authorship of that copyright

Hugo alleges considerably less as to "U Gotta," which, significantly, is a recording by *another artist*. Yet, the SAC does not identify the authors or owners of either the composition or the sound recording, much less explain whether Hugo's claimed ownership interest would affect any of their existing interests. Moreover, the conclusory assertion that Hugo "contributed copyrightable expression" therefore does not suffice.

Nor can Count V survive merely by limiting it to "U Gotta." Identification of a title answers only the first question. The SAC still does not identify which copyright in "U Gotta" Hugo claims to co-own, what copyrightable expression he con-tributed to that particular copyrighted work, or any nonconclusory facts constituting objective manifest-ations that Hugo and Williams mutually intended to be joint authors of that copyright. Thus, even if the Court disregards every unidentified work swept into the phrase "including but not limited to," Count V still fails as to the sole work actually named.

**E. COUNT V INDEPENDENTLY FAILS AGAINST TALAMASCA.**

Count V is pled "Against All Defendants." Yet SAC ¶ 94 alleges: "An actual controversy exists between Plaintiff and Defendant Williams regarding Plaintiff's status as a joint author and co-owner of the Copyrighted Works" (again, without defining "Copyrighted Works"). The alleged denial of authorship likewise is attributed to Williams. The SAC does not allege that Talamasca separately claims copyright ownership adverse to Hugo with respect to any composition or sound recording. That omission is fatal to a declaratory relief claim, which requires that an actual controversy exist between parties having adverse legal interests as to the very question presented.

MedImmune, Inc. v. Genentech, Inc.,549 U.S. 118, 127 (2007).

Receiving money from, or participating in the exploitation of, a work is not the equivalent of asserting an adverse copyright title. A distributor, administrator, or a payee may have no ownership position at all – and the SAC does not allege that any of these Defendants claims one. *See* Yount v. Acuff Rose-Opryland, 103 F.3d 830, 834-35 (9th Cir. 1996). Count V therefore should independently be dismissed against Talamasca.

### F. FAILURE TO PROVIDE "CREDIT AND ATTRIBUTION" DOES NOT CREATE AN INDEPENDENT FEDERAL COPYRIGHT CLAIM.

Count V also asks the Court to award Hugo "proper credit and attribution as a co-author and producer of the Copyrighted Works." SAC ¶ 100(c). There is no such relief available for any federal Copyright Act claim. Section 106 enumerates the ordinary exclusive rights afforded copyright owners. It does not create a general federal right to receive producer, songwriter, or authorship credit for musical compositions or sound recordings. 17 U.S.C. § 106.

Congress knew how to create attribution rights when it wanted to do so. Indeed, it did so in 17 U.S.C. Section 106A, which confers rights of attribution and integrity, but only upon authors of a "work of visual art," a term that the Copyright Act defines narrowly, and which does not apply to the "works" alleged in the SAC. 17 U.S.C. §§ 101, 106A(a) and (b). *See*, UMG Recordings, Inc. v. Disco Azteca Distributors, Inc., 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006) ("[I]t is well established that the right to attribution is not a protected right under the Copyright Act").

Thus, if Hugo has a contractual right to credit as a producer, songwriter, or something else under the alleged "Arrangement" or some other contract, he may assert whatever contractual remedy that agreement provides. However, that is a state law claim, and it is the kind of claim that Hugo has actually been pressing since at least 2021. However, failure to give such credit is not itself a separate federal copyright claim for relief.

To be clear, Defendants do not contend that credit is irrelevant. Lack of credit

may sometimes constitute evidence relevant to whether claimed copyright ownership was repudiated. That is materially different from creating a federal claim for relief for lack of credit. Accordingly, if Hugo's actual ownership claim fails, his demand for "proper credit and attribution" cannot independently sustain Section 1338(a) jurisdiction.

### G. COUNT VI'S ACCOUNTING CLAIM DOES NOT ARISE UNDER FEDERAL COPYRIGHT LAW.

Count VI presents an even clearer defect. The SAC affirmatively alleges that the accounting claim arises under the Copyright Act because it requires the Court "to apply the duty to account that federal copyright law imposes upon co-owners of copyrighted works," and invokes Section 1338(a) jurisdiction over Count VI on that basis. SAC ¶ 6. Count VI repeats the assertion, and expressly relies upon the Second Circuit's decision in Merchant v. Levy, 92 F.3d 51 (2d Cir. 1996). SAC ¶ 102.

However, controlling Ninth Circuit law says otherwise. In Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984), the Ninth Circuit recognized that one copyright co-owner generally may owe another a duty to account for profits; however, the court expressly held that the **duty does not derive from federal copyright law**. Rather, it arises from equitable unjust-enrichment principles and general law governing co-owners. Even assuming that an accounting remedy is available at all, it does not "arise under" the Copyright Act, and therefore **cannot supply Section 1338 jurisdiction.** Id. at 633 n.2.

Zuill v. Shanahan, 80 F.3d 1366, 1369-70 (9th Cir. 1996), likewise treated accounting as subsidiary to the operative copyright ownership claim.

Count VI therefore does not state the independent federal Copyright Act claim that the SAC says it does. At most, an accounting potentially *may become available* as ancillary equitable relief – if Hugo first establishes a viable and timely ownership interest.

### H. THE JURISDICTIONAL HISTORY DEMONSTRATES THAT THE COPYRIGHT OWNERSHIP THEORY IS NOW THE ONLY POSSIBLE FEDERAL ANCHOR.

The pleading history in this case with respect to subject-matter jurisdiction is also

instructive. The original Complaint contained no federal claim; it alleged solely diversity jurisdiction. Complaint, ¶ 4. Complete diversity requires that no plaintiff share citizenship with any defendant. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). The original Complaint, and then the FAC, and now the SAC, identified Hugo as a *Virginia* resident, and named CH & PW, Inc. and PW & CH, Inc. as *Virginia* corporations. Complaint ¶¶ 6, 10–11. Moreover, Hugo sued N.E.R.D. Music, LLC and "NEPTUNES, LLC/NEPTUNES LLC," with one of its members, Hugo, an admitted *Virginia* resident.

Although residence alone does not establish *citizenship*, an individual's citizenship is determined by *domicile*. Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). Assuming that Hugo is domiciled in Virginia, where he "resides," the SAC identifies at least two defendants that plainly share his citizenship: Defendant CH & PW, Inc. is incorporated in Virginia; Defendant PW & CH, Inc. is incorporated in Virginia.

However, Hugo has an even greater problem with the LLC defendants. Hugo alleges that he is a co-owner of both entities. An LLC takes the citizenship of each of its members. Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). Thus, whatever state of which Hugo is a citizen, each LLC is a citizen of that state. Complete diversity therefore fails multiple times over, and this Court did not have subject matter jurisdiction when the original Complaint was filed.

Once the purported federal copyright claims appeared, the FAC abandoned the prior Section 1332 jurisdictional assertion, and the SAC does the same. Paragraphs 4-6 rely upon federal copyright jurisdiction, while Paragraph 7 expressly invokes **supplemental jurisdiction** over the state-law claims, which the SAC itself calls "Plaintiff's state law claims." SAC ¶ 7. The Court need not infer why Plaintiff altered his jurisdictional theory. The objective consequence is sufficient: **Counts V and VI are now the only pled bases for federal jurisdiction**. Once the copyright ownership claim fails, the SAC has no independent federal fallback.

**1. Neither "Credit" Nor "Accounting" Can Preserve Federal Question Jurisdiction.**

As discussed above, the request for credit does not create a general Copyright Act claim for relief for musical compositions or sound recordings. UMG, *supra*, 446 F. Supp. 2d at 1178. Similarly, the request for accounting does not arise under federal copyright law either. Oddo, *supra*, 743 F.2d at 633 and n.2. Finally, Zuill v. Shanahan, 80 F.3d at 1369-70 establishes that such accounting relief is subsidiary to the asserted ownership claim rather than an independent copyright cause of action.

Accordingly, the only potentially cognizable federal issue is a properly-pled copyright **ownership** dispute; if Count V fails, no federal attribution claim remains; no federal accounting claim remains; no diversity jurisdiction exists; and Counts I through IV remain exactly what the SAC calls them – state law claims that are before this Court solely through supplemental jurisdiction.

**2. This Court Should Decline Supplemental Jurisdiction Over Counts I - IV.**

Section 1367(c)(3) authorizes a federal court to decline supplemental jurisdiction once "the district court has dismissed all claims over which it has original jurisdiction." That is the appropriate result here. When federal claims are dismissed before trial, the balance of judicial economy, convenience, fairness, and comity will point toward declining jurisdiction over the remaining state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

The remaining claims concern fiduciary duties, LLC governance, contractual information rights, operating agreements, distributions, royalties, state-law accounting, and related declaratory relief. The SAC itself characterizes those claims as state law matters, and relies exclusively upon Section 1367 to keep them in federal court.

The case remains at an early stage. There has been no scheduling conference, no discovery, and no adjudication on the merits; indeed, Plaintiff has not even completed service on the majority of the Defendants.

Notably, Zuill itself involved the same procedural consequence: after disposition of the federal copyright co-ownership issue, the district court declined supplemental

jurisdiction over the remaining state law claims, and dismissed them without prejudice. 80 F.3d at 1370. This Court should do the same here.

## I. PLAINTIFF'S REPEATED OPPORTUNITIES TO FORMULATE THESE CLAIMS WARRANT STRICT LIMITS ON ANY FURTHER AMENDMENT.

The Supreme Court recognizes "repeated failure to cure deficiencies by amendments previously allowed" as a basis for denying further leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1962). The procedural history here is extraordinary. Hugo had asserted intellectual property and credit disputes by March of 2022. The parties then tolled broadly-defined intellectual property claims for three years. Hugo, in his original Complaint, nevertheless **failed to assert a single copyright ownership claim**. The FAC, filed only twenty days later, then suddenly identified **eight particular works and an enormous, but vaguely-identified additional universe of claimed works**.

The SAC now abandons the only eight works that had been named, deletes the FAC's definition of "Copyrighted Works," and **identifies only one "work,"** while continuing to rely on "including but not limited to" language that suggests a possibly-infinite number of other unidentified works that Hugo supposedly co-authored exist. Even with respect to the only identified "work," the SAC cannot say whether Hugo claims ownership of the **composition, the sound recording, or both**.

This is the rare case in which each successive pleading has made the federal claims more difficult to answer than the one before it. At some point, a plaintiff must identify the intellectual property whose title he asks a federal court to adjudicate. Therefore, if the Court is inclined to permit yet another amendment, leave should be narrowly restricted to require Hugo to state, once and for all, **every composition or sound recording that he claims to have co-authored, and the factual basis for that ownership**. The Court should not permit yet another open-ended pleading that requires Defendants to continue to guess.

///

### J. ALTERNATIVELY, THE COURT SHOULD REQUIRE A MORE DEFINITE STATEMENT UNDER RULE 12(e).

If the Court concludes that Counts V and VI technically survive Rule 12(b)(6), this is precisely the unusual pleading for which Rule 12(e) is appropriate. Defendants recognize that Rule 12(e) motions are disfavored where a defendant seeks detail obtainable in discovery. However, that is not this motion. Defendants are not asking Hugo to disclose or produce evidence. They are asking that he simply identify **what "works" he claims to have co-authored.** This is exclusively within his own knowledge.

Defendants cannot reasonably admit or deny that Hugo is a co-owner of the "Copyrighted Works" when the term is hopelessly undefined. Just about every paragraph of the Answer to the SAC would have to state, in substance, that Defendants lack knowledge sufficient to respond because they cannot decipher what has been alleged, which is the very definition of a pleading that fails the standard set forth in Rule 12(e). Bureerong, *supra*, 922 F. Supp. at 1461.

Nor can Defendants intelligently assert work-specific defenses involving joint authorship, work made for hire, assignment, chain of title, license, producer agreements, recording agreements, publishing agreements, payment, release, or the Copyright Act's limitations period for works that remain unidentified.

### K. THE SAC'S FAILURE TO IDENTIFY THE COPYRIGHTS AND THEIR EXISTING OWNERS PREVENTS THE COURT AND DEFENDANTS FROM DETERMINING WHETHER F.R.C.P. 19 REQUIRES JOINDER.

There is another fundamental consequence of Hugo's failure to identify the copyrights whose ownership he asks this Court to adjudicate: neither Defendants nor the Court can determine whether persons having existing ownership interests in those copyrights are required parties under Rule 19. Rule 19(a) requires joinder not only where the Court cannot accord complete relief among the existing parties, but also where an absent person claims an interest relating to the subject of the action and adjudication

in that person's absence may, as a practical matter, impair or impede that person's ability to protect that interest, or expose an existing party to a substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(A)-(B); *see* Shermoen v. United States, 982 F.2d 1312, 1317 (9th Cir. 1992); Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990).

That inquiry is potentially significant here. Hugo seeks a declaration that he is a joint author and co-owner of copyrights presently identified only as the (undefined) "Copyrighted Works." SAC ¶¶ 94–100. The authors of a joint work are co-owners of the copyright. 17 U.S.C. § 201(a). Each co-owner possesses an independent right to exploit or license the work, subject to a duty to account to the other co-owners. Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984). Thus, depending upon the existing ownership of a particular copyright, and the nature of Hugo's claimed interest, a judicial declaration adding Hugo to the ownership group potentially may affect interests held by persons who are not parties to this action.

Copyright cases applying Rule 19 accordingly recognize that an absent copyright owner may be a required party where adjudication may affect that owner's copyright or economic interest. *See* Shropshire v. Canning, No. 10-CV-01941-LHK, 2011 WL 90136, at *3–5 (N.D. Cal. Jan. 11, 2011) (finding absent co-owner of musical composition a required party under Rule 19(a), and indispensable under Rule 19(b), where adjudication implicated her ownership and economic interests). The point is not that every copyright co-owner invariably must be joined; Rule 19 requires a fact-specific inquiry into the absent person's interest and the effect of the requested adjudication upon it.

Armes, *supra*, illustrates the precise reason why the information omitted from the SAC matters. The plaintiff in Armes identified the particular work at issue, separately asserted interests in its musical composition and sound recording, identified the credited writers, expressly disclaimed any challenge to the absent writers' authorship or ownership shares, and limited the ownership interest that he sought to interests claimed by the defendants that were before the court. Id. at *3-5. ***On those facts***, the court concluded

that the absent writers were not required parties, confirming that the inquiry turns on the claimed ownership interest and its effect on rights held by others. Id.

Hugo has provided none of the information that permitted the Armes court to conduct that analysis. Except for "U Gotta," he does not identify any works. Even as to "U Gotta," he does not identify whether he claims an interest in the *composition*, the *sound recording*, or both; who presently owns either copyright; what percentage Hugo claims; whether other persons are authors or co-owners; whether Hugo challenges their ownership percentages; or from whose existing interest his claimed ownership share supposedly would come. The SAC therefore makes it impossible to determine whether adjudicating Hugo's requested declaration would affect the ownership interests of absent persons.

Rule 19(c) reinforces the problem. A pleading asserting a claim for relief must "state the name, if known, of any person who is required to be joined if feasible but is not joined" and "the reasons for not joining that person." Fed. R. Civ. P. 19(c). Hugo cannot evade that inquiry by pleading his purported copyrights and their ownership so vaguely that neither the Court nor Defendants can determine who else possesses an interest in the property whose ownership he asks the Court to adjudicate.

This provides still another reason for which the SAC cannot proceed in its present form. At a minimum, Hugo must identify each copyright whose ownership he places at issue, the persons or entities known to claim ownership of that copyright, the percentage ownership that he claims for himself, and whether his claimed interest would reduce or otherwise affect an ownership interest presently claimed by someone else. Only then can Defendants and the Court determine whether Rule 19 is implicated and, if so, whether any additional party must be joined.

### L. THERE ARE ALSO STATUTE OF LIMITATIONS IMPLICATIONS BY VIRTUE OF HUGO'S FAILURE TO IDENTIFY PARTICULAR WORKS AND OTHER CO-AUTHORS.

The statute-of-limitations implications are particularly significant. A civil action under the Copyright Act must be commenced within three years after the claim accrued.

17 U.S.C. § 507(b); Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994). Moreover, Zuill holds that a co-ownership claim accrues upon the plain and express repudiation of the claimant's ownership. 80 F.3d at 1369.

The date and circumstances of any alleged repudiation may differ from work to work, copyright to copyright, and co-owner to co-owner. It is therefore imperative for Hugo to be specific and exhaustive in his allegations concerning co-ownership.

Therefore, if the Court permits Counts V and VI to proceed as is, Plaintiff should be ordered to state, **for each claimed copyright**: (1) the title of the relevant composition or recording; (2) whether Hugo claims ownership of the musical composition, the sound recording, or both; (3) if a composition, the copyrightable music and/or lyrics that Hugo claims to have created; (4) if a sound recording, the performance and/or production authorship that Hugo claims to have contributed to the actual master; (5) the alleged facts establishing joint authorship, including objective manifestations of intent; (6) the basis upon which Hugo claims present ownership, including any applicable work-for-hire, assignment, recording, producer, or publishing arrangements; (7) the Defendant(s) against whom Hugo asserts an adverse ownership claim to each copyright; (8) the conduct allegedly constituting denial or repudiation of his claimed ownership; (9) each person or entity, other than the parties to this action, that presently claims ownership of each such copyright; and (10) the percentage ownership interest that Hugo claims in each copyright, and whose existing interest he contends to be reduced by his claim.

None of that is burdensome, and all of it is information that Hugo should know. After years of dispute, more than three years of tolling, and three successive pleadings, Hugo should not be permitted to preserve an undefined reservoir of copyrights that can expand exponentially throughout the case.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court:

1. **Dismiss Count V pursuant to Rule 12(b)(6)** because Plaintiff fails to identify the copyrighted works whose ownership he seeks to adjudicate, fails to

distinguish musical compositions from sound recordings, and fails to plead sufficient facts establishing joint authorship even as to the sole named "work," "U Gotta";

2. **Independently dismiss Count V against Talamasca** because the SAC fails to allege an actual adverse copyright ownership controversy with that defendant;

3. Make a ruling that Plaintiff's demand for **"proper credit and attribution"** does not state an independent federal Copyright Act claim for relief applicable to the musical compositions and sound recordings alleged herein;

4. **Dismiss Count VI** because an alleged copyright co-owner's right to an accounting does not arise under federal copyright law, and does not constitute an independent cause of action supporting jurisdiction under 28 U.S.C. § 1338(a);

5. Upon dismissal of Counts V and VI, **decline supplemental jurisdiction pursuant to 28 U.S.C. Section 1367(c)(3)**, and dismiss Counts I through IV without prejudice because no federal claim remains, and diversity is absent;

6. Alternatively, if Counts V and VI are not dismissed, **issue an order to Plaintiff, pursuant to Rule 12(e), to provide a more definite statement** identifying every copyright whose ownership he places at issue, including whether each claim concerns a musical composition, a sound recording, or both; the precise copyrightable expression that Hugo claims he contributed; the factual and contractual basis of his claimed ownership; the persons or entities known to claim ownership of each copyright; his claimed percentage of ownership; whether his claimed interest would reduce or otherwise affect an existing ownership interest; and any alleged act of repudiation.

7. **Deny further open-ended leave to amend**, or strictly limit any amendment to curing the specific deficiencies identified by the Court.

Dated: October 6, 2026

Edwin F. McPherson
Gabriel Henriquez
**McPHERSON LLP**

By: /s/ *Edwin F. McPherson*
EDWIN F. McPHERSON
Attorneys for Defendants
PHARRELL WILLIAMS and
TALAMASCA, INC.