Brent J. Lehman (State Bar No. 282149)
blehman@munckwilson.com
Dina Ovsepian (State Bar No. 328942)
dovsepian@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 855-3311
Facsimile: (972) 628-3616

Attorney for Plaintiff,
CHARLES EDWARD HUGO
p/k/a CHAD HUGO

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

CHARLES EDWARD HUGO p/k/a CHAD HUGO, an individual;

Plaintiff,

v.

PHARRELL WILLIAMS, an individual; N.E.R.D. MUSIC, LLC, a Delaware limited liability company; NEPTUNES, LLC/NEPTUNES LLC, a Delaware limited liability company; CH & PW, INC., a Virginia corporation; PW & CH, INC., a Virginia corporation; PW BRANDING, INC., a California corporation; PW IP HOLDINGS, LLC, a Delaware limited liability company; TALAMASCA, INC., a Delaware corporation; and DOES 1-10 inclusive,

Defendants.

Case No. 2:26-cv-00746-AB-PD

*[Assigned for all purposes to the Hon. André Birotte Jr.]*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS PHARRELL WILLIAMS AND TALAMASCA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. SUMMARY OF ALLEGATIONS .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. HUGO IS A CO-EQUAL FOUNDING CREATIVE PARTNER IN A TWO-PERSON DUO, NOT A GUEST WHO OFFERED SUGGESTIONS AT A SESSION. .......... 5

B. THE SECOND AMENDED COMPLAINT IDENTIFIES THE WORKS AT ISSUE, AND, AT A MINIMUM, STATES A CLAIM AS TO "U GOTTA," WHICH DEFEATS DISMISSAL .......... 8

C. COMPOSITIONS AND SOUND RECORDINGS ARE SEPARATE WORKS—WHICH MEANS ANY PERCEIVED GAP IN THE SOUND-RECORDING ALLEGATIONS CANNOT DEFEAT THE COMPOSITION CLAIM. .......... 11

D. THE ARGUMENTS ABOUT TALAMASCA AND ABOUT "CREDIT" DO NOT WARRANT DISMISSAL OF THE OWNERSHIP CLAIM AGAINST WILLIAMS. .......... 14

E. COUNT VI AND THE STATE-LAW CLAIMS BELONG IN THIS COURT, AND DEFENDANTS' SUPPLEMENTAL-JURISDICTION ARGUMENT COLLAPSES ONCE COUNT V SURVIVES. .......... 15

F. DEFENDANTS' REMAINING ARGUMENTS — EXTRINSIC EVIDENCE, RULE 12(E), RULE 19, AND LIMITATIONS — PROVIDE NO BASIS FOR RELIEF .......... 18

*1. Defendants improperly ask the Court to resolve disputed facts on materials outside the pleading.* .......... *18*

*2. Rule 12(e) relief should be denied because Defendants seek discovery, not intelligibility.* .......... *20*

*3. Rule 19 joinder concerns are premature and were never properly raised.* .......... *21*

*4. Defendants' limitations "implications" provide no basis for dismissal, and their own exhibits defeat them.* .......... *21*

G. IF THE COURT FINDS ANY DEFICIENCY, LEAVE TO AMEND SHOULD BE FREELY GRANTED, AND PLAINTIFF HAS ALREADY IDENTIFIED EXACTLY WHAT HE WILL PLEAD. .......... 22

V. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Cases**

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) ....1, 5, 6, 7, 20
*Accord Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)....19
*Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997) ....17
*Aquarian Foundation, Inc. v. Lowndes*, 127 F.4th 814 (2025) ....12
*Armes v. Post*, 2020 WL 6135068 (C.D. Cal. Oct. 19, 2020) ....8, 12, 21
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....4
*Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (9th Cir. 1990)....6, 9
*Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010) ....17
*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ....23
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....4
*Beom Su Lee v. eBay*, 2017 WL 10373960 (C.D. Cal. Oct. 4, 2017)....10
*Brandon Palas v. Le Domaine*, 2026 WL 2494592 (C.D. Cal. Aug. 20, 2026) ....4
*Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787 (9th Cir. 1963) ....22
*Browne v. Donalds*, 2024 WL 3468898 (C.D. Cal. May 28, 2024)....10
*Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996) ....20
*Can-Am Fuel Distribution, LLC v. Sinclair Oil, LLC*, 188 F.4th 1116 (9th Cir. 2026)....4
*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ....17
*Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113 (C.D. Cal. 2012)....24
*Center for Biological Diversity v. Veneman*, 394 F.3d 1108 (9th Cir. 2005) ....23
*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ....12
*Creative Dream Prods., LLC v. Houston*, 2015 WL 12731915 (C.D. Cal. Apr. 2, 2015)....6
*Deal v. Henry*, 2026 WL 2127169 (C.D. Cal. June 30, 2026) ....22, 24
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ....22
*Fleurimond v. New York University*, 722 F. Supp. 2d 352 (E.D.N.Y. 2010)....13
*Foman v. Davis*, 371 U.S. 178 (1962) ....3, 23
*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015)....9
*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302 (2d Cir. 2013) ....13
*Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877 (9th Cir. 1999) ....23
*Hartmann v. Popcornflix.com LLC,* 690 F. Supp. 3d 309 (S.D.N.Y. 2023) ....13
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ....2, 4, 19
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)....22
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)....25
*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ....21
*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ....14
*Merchant v. Levy*, 92 F.3d 51, 55-56 (2d Cir. 1996)....16
*Morrill v. Smashing Pumpkins*, 157 F. Supp. 2d 1120 (C.D. Cal. 2001)....13

*Moss v. U.S. Secret Serv*., 572 F.3d 962 (9th Cir. 2009)....................22
*Nahat v. Ballet San Jose, Inc.*, 2013 WL 5934705 (N.D. Cal. Nov. 1, 2013) ....................17
*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) ....................11
*Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984) ....................15, 16
*Paramount Pictures Corp. v. Axanar Prods., Inc*., 2016 WL 2967959 (C.D. Cal. May 9, 2016).10
*Perfect 10, Inc. v. Cybernet Ventures, Inc*., 167 F. Supp. 2d 1114 (C.D. Cal. 2001) ....................5, 20
*Rams v. Recordings*, 2015 WL 13917663 (C.D. Cal. Nov. 3, 2015) ....................17
*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008)....................6, 9
*Ricketts v. Berlanti Prods*., 2022 WL 1046252 (9th Cir. Apr. 7, 2022)....................5
*Ricketts v. CBS Corps*., 439 F. Supp. 3d 1199 (C.D. Cal. 2020) ....................5
*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) ....................18
*Roley v. New World Pictures, Ltd*., 19 F.3d 479 (9th Cir. 1994) ....................21
*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025)....................15, 17, 18
*Seattle Hunters, LLC v. Thomas Family Farm*, 2014 WL 1674124 (C.D.C.A. April 9, 2020).....19
*Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992)....................21
*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)....................4
*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995)....................21
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................20
*Therapeutic Research Faculty v. NBTY, Inc*. 488 F.Supp.2d 991 (2007)....................19
*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053 (9th Cir. 2004) ....................23
*Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998) ....................7
*Thunder Studios, Inc v. Kazal*, 2018 WL 5099726 (C.D. Cal. Mar. 22, 2018)....................10
*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc*., 8 F. Supp. 2d 357 (S.D.N.Y. 1998).13
*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (2012) ....................13
*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co*., 931 F.3d 966 (9th Cir. 2019)..12
*UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164 (E.D. Cal. 2006)...14
*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ....................17, 18
*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016) ....................11, 12
*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) ....................21
*Waite v. UMG Recordings, Inc*., 450 F. Supp. 3d 430 (S.D.N.Y. 2020) ....................13
*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)....................15
*Wolf v. Travolta*, 2014 WL 2472254 (C.D. Cal. June 2, 2014)....................13
*Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816 (C.D. Cal. 1997)....................16
*Yount v. Acuff Rose-Opryland*, 103 F.3d 830 (9th Cir. 1996)....................14
*Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996)....................16, 18, 21

**Statutes**

17 U.S.C. § 101 ....................4, 5, 12, 16
17 U.S.C. § 106(a) ....................14
17 U.S.C. § 201 ....................4

17 U.S.C. § 201(a) .......... 3, 16
17 U.S.C. § 201(b) .......... 12
17 U.S.C. § 507(b) .......... 21
28 U.S.C. § 1338(a) .......... 16, 17, 18
28 U.S.C. § 1367 .......... 15, 16
28 U.S.C. § 1367(a) .......... 2, 15, 17, 18, 24, 25
28 U.S.C. § 1367(c) .......... 25
28 U.S.C. § 1367(c)(3) .......... 16, 17
28 U.S.C. § 1653 .......... 15
28 U.S.C. §§ 2201-2202 .......... 4

**Other Authorities**

Ninth Cir. Model Civ. Jury Instr. 17.9 .......... 7
Ninth Cir. Model Civ. Jury Instr. 17.9 cmt. .......... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 4, 14, 21
Fed. R. Civ. P. 12(b)(7) .......... 21
Fed. R. Civ. P. 12(e) .......... 20, 25
Fed. R. Civ. P. 15(a)(2) .......... 22
Fed. R. Civ. P. 15(c)(1)(B) .......... 22
Fed. R. Civ. P. 19 .......... 21

## I. INTRODUCTION

Defendants ask the Court to write Chad Hugo out of The Neptunes on the pleadings, before a single document has been produced. But The Neptunes were two people. For three decades, Hugo and Pharrell Williams wrote and produced records together under that name. Hugo has always been at the center of the Neptunes success and is equally responsible for the duo's special place in industry. Over the past few years, Williams has sought to erase Hugo from one of the greatest hip-hip ***duos*** of all time. This case is about Williams' effort to rewrite history and turn The Neptunes' success into the work of only one person.

In February 2019, Williams told Hugo he "never wanted to work without [him] again" and asked him to come back. The terms were the ones they had always used: a 50/50 production split and 50/50 of the publishing splits "for each composition." SAC ¶ 36. Hugo held up his end through nearly fifty studio sessions. SAC ¶ 37. Williams then kept the credit, the publishing, and the royalties, and he denied that Hugo co-authored anything. SAC ¶¶ 38, 64. On "U Gotta," Hugo was removed as an artist from a track that the recording artists themselves say he helped create. SAC ¶ 62 & n.6. As stated in Hugo's 2022 demand letter: Williams had "decided to erase history" and to excise Hugo's rights in The Neptunes. McPherson Decl. Ex. A at 1.

The Motion is the next step in that erasure. It asks the Court to treat a co-founder as a hired hand by applying the test from *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000). That test was built for a consultant on someone else's film. The *Aalmuhammed* plaintiff had no agreement, and the director "had final say." *Id*. at 1235-36. Its control, intent, and audience-appeal factors apply "in the absence of contract." *Id*. at 1234-35. Conversely, Hugo was a 50/50 partner and collaborator in one of the most esteemed hip-hip duos of all time. The Neptunes ***always*** had even split of the publishing on every composition, which is an objective manifestation of an intent to be co-authors. The recording at issue was always intended to be produced by The Neptunes. The Motion never mentions that fact.

The remaining arguments also fail. First, the SAC identifies "U Gotta," whose allegations the Motion does not challenge, and defines the remaining works as those created

during the 2019-2021 sessions. As this Court has held, copyright plaintiffs may plead representative works. Williams controls the records identifying every title.

Second, the SAC separately pleads compositions and sound recordings, each with supporting facts. Any gap as to the recordings therefore cannot defeat the composition claim. Third-party ownership of the masters and work-for-hire status are factual affirmative defenses, and Defendants concede Hugo need not plead his chain of title.

Third, the Talamasca and "credit" arguments do not affect the ownership claim against Williams. Talamasca allegedly receives diverted Neptunes revenues as a Williams-controlled entity, and credit is sought as a remedy, not pleaded as a claim.

Fourth, this case belongs here. Count VI shares the same facts as Count V and falls within supplemental jurisdiction under § 1367(a). Count V, in turn, anchors Counts I–IV. Diversity is irrelevant.

Finally, the Motion improperly seeks discovery under Rule 12(e) and relies on extrinsic materials that *Khoja* bars from contradicting the pleading. It speculates about Rule 19 without invoking Rule 12(b)(7) and limitations without seeking dismissal on that ground. If considered, Defendants' exhibits instead corroborate the 2019 Arrangement and show that Williams, including for Talamasca, tolled these claims from January 3, 2023, through January 24, 2026.

Two fair points require only minor amendments: restoring the omitted definition of "Copyrighted Works" with a schedule and citing § 1367(a) in Count VI. Neither warrants dismissal.

## II. SUMMARY OF ALLEGATIONS

Hugo and Williams met as teenagers in Virginia Beach in the late 1980s and founded The Neptunes and, later, N.E.R.D. SAC ¶¶ 20, 23-25. From the outset Hugo contributed the core compositional, instrumental, and production work and Williams the performance, vocal, and songwriting elements. SAC ¶ 21. Operating from the early 1990s as The Neptunes, a production and songwriting duo, Hugo "served as principal composer, arranger, multi-instrumentalist and producer responsible for programming, instrumentation, and

overall sound design," while Williams was more frequently public-facing. SAC ¶ 22. His contributions as a founding creative partner, co-writer, and producer were "indispensable" to the duo's works and to the genre-blending sound audiences identify as The Neptunes. SAC ¶ 26. Hugo holds a fifty percent interest in the Neptunes Entities and information and inspection rights under the N.E.R.D. Music, LLC Operating Agreement. SAC ¶¶ 28-34. Williams is the managing member of the Company and, on information and belief, the sole or controlling owner of the Defendant Entities, including Talamasca, Inc. SAC ¶ 10.

In February 2019, after a hiatus, Williams told Hugo he "never wanted to work without [Plaintiff] again" and asked him to travel to Miami to work on songs under The Neptunes name. The parties agreed to a 50/50 production split and to 50/50 of the publishing splits for each composition—the same splits in effect throughout their decades-long relationship (the "Arrangement")—and Hugo fully performed, participating in nearly fifty studio sessions from 2019 through 2021. SAC ¶¶ 36-37. Thereafter Williams denied Hugo his publishing share and record royalties and took full credit for the parties' joint work. SAC ¶ 38. Hugo made repeated demands beginning in 2021, including a March 18, 2022 letter "placing Defendant Williams on notice of Plaintiff's claims," SAC ¶¶ 41-43; Williams is alleged to have diverted Company and Neptunes revenues to Defendant Entities, SAC ¶ 54; and the parties entered a tolling agreement that expired January 24, 2026, SAC ¶ 55.

Defendants' motion turns on the copyright allegations set forth in the SAC, which set forth that Hugo "possesses substantial copyright interests in musical compositions and sound recordings created as part of his work with Williams as The Neptunes." SAC ¶ 57. The pleading sets out the joint-work definition, alleges numerous joint works created with the intention that the parties' contributions merge into unitary wholes, and alleges co-ownership under 17 U.S.C. § 201(a). SAC ¶¶ 58-61. "Among the musical works to which Plaintiff contributed copyrightable expression as a joint author, along with Defendant Williams, are musical tracks and albums, including but not limited to 'U Gotta' by Earthgang"—a track as to which EarthGang publicly confirmed, on The Breakfast Club, that Hugo contributed copyrightable expression and was removed as an artist. SAC ¶ 62 &

n.6. Hugo contributed with the mutual understanding that his contributions would be credited and compensated pursuant to the agreed 50/50 production split; Williams failed to credit him and has denied his joint authorship. SAC ¶¶ 63-64. On information and belief, Williams and entities he controls exploited the co-authored works without credit or accounting, SAC ¶ 65, and an actual controversy exists, SAC ¶¶ 66, 94.

Defendants challenge Count V, which seeks a declaratory judgment of copyright ownership under 28 U.S.C. §§ 2201-2202 and 17 U.S.C. §§ 101 and 201, including a declaration of joint authorship and, among the relief requested, "proper credit and attribution." SAC ¶¶ 94-100. Count VI seeks an accounting of Plaintiff's share of copyright profits, alleging the co-owner's duty to account, exploitation, the agreed equal division of all Neptunes income, and Defendants' retention of all proceeds. SAC ¶¶ 104-109. Counts I through IV arise from the same relationship and Arrangement. SAC ¶ 7.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a claim, not the strength of the evidence behind it. "Courts generally accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubt in the pleader's favor." *Brandon Palas v. Le Domaine*, 2026 WL 2494592, at *1 (C.D. Cal. Aug. 20, 2026) (Birotte Jr., J.); accord *Can-Am Fuel Distribution, LLC v. Sinclair Oil, LLC*, 188 F.4th 1116, 1122 (9th Cir. 2026). A claim survives if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement," *id.*, and neither case converted Rule 8(a)(2)'s "short and plain statement" into a code-pleading regime, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Two corollaries govern: the Court may not resolve fact-intensive multi-factor tests on the pleadings, and it may not "assume the truth" of an extrinsic document's contents to defeat well-pleaded allegations. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).

/ / /

## IV. ARGUMENT

### A. <u>Hugo is a co-equal founding creative partner in a two-person duo, not a guest who offered suggestions at a session</u>.

A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. When co-authorship is disputed, the Ninth Circuit considers control, objective manifestations of a shared intent to be co-authors, and whether the work's audience appeal depends on both contributions, with each contributor's share difficult to appraise. *Aalmuhammed*, 202 F.3d at 1234. *Aalmuhammed* articulated those factors for cases arising "in the absence of contract" and noted that control "in many cases will be the most important factor." *Id.* at 1234-35; see also Ninth Cir. Model Civ. Jury Instr. 17.9 cmt. (2026); cf. *Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199, 1224 n.10 (C.D. Cal. 2020) (*Aalmuhammed* looked at factors "because a contract did not exist"). *Ricketts v. Berlanti Prods.*, 2022 WL 1046252 (9th Cir. Apr. 7, 2022); *Ellis v. Infinite Labs, LLC*, 2014 WL 12558115, at *4 (C.D. Cal. Aug. 1, 2014) ("In *Aalmuhammed v. Lee*, the Ninth Circuit articulated three criteria for determining whether two or more individuals are joint authors. Importantly, however, these factors apply only 'in the absence of [a] contract.'") (citations omitted).

Moreover, *Aalmuhammed* is a summary judgment case, and these factors thus address evidence, not a pleading-stage checklist. Cf. *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("Copyright claims need not be pled with particularity."). *Aalmuhammed* identified considerations for a fact-intensive inquiry, not rigid pleading elements. 202 F.3d at 1234; see also *id.* at 1235 ("The factors articulated in this decision … cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much. Different people do creative work together in different ways, and even among the same people working together the relationship may change over time as the work proceeds."). This is exactly why courts generally find that the determination of joint authorship is a factual inquiry that is often "ill-suited to resolution on

a motion to dismiss." *Creative Dream Prods., LLC v. Houston*, 2015 WL 12731915, at *4 (C.D. Cal. Apr. 2, 2015) (collecting cases).

Control, intent, and audience appeal depend on evidence about what occurred in the studio, and Defendants cite no authority requiring evidentiary detail as to each factor at the pleading stage. The SAC nevertheless alleges facts corresponding to all three: Hugo's creative role; the parties' shared enterprise and equal ownership; their express, consistently honored equal division of publishing and production; Williams' invitation to reunite as a duo; Hugo's performance during nearly fifty sessions; and the inseparable sound they created together. The Neptunes are Chad Hugo and Pharrell Williams, and their contributions are collaborative. Defendants' assertion that a "substantial creative contribution" does not establish authorship, Mot. at 23, finds no support in their cited authorities, much less at the pleading stage. The Ninth Circuit instead explained that joint authorship "requires more than a minimal creative or original contribution to the work"—a requirement the SAC satisfies. Cf. *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (recognizing that even a "minor" contributor may qualify for joint ownership).

**Control.** *Aalmuhammed* asks who "superintend[ed]" the work. *Id.* Hugo was the principal composer, arranger, multi-instrumentalist, and producer "responsible for programming, instrumentation, and overall sound design." SAC ¶ 22. A person who determines a track's chords, arrangement, instrumentation, drum programming, and sonic architecture superintends its creation. Hugo allegedly did so during nearly fifty sessions, SAC ¶ 37, after serving in the same role for roughly thirty years, SAC ¶¶ 20-26.

A joint work, by definition, has two or more authors and may have more than one "master mind," provided each makes an independently copyrightable contribution. Ninth Cir. Model Civ. Jury Instr. 17.9 cmt. (citing *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990)). Defendants recast Hugo as someone whose work was subject to another's final say, but the pleading supports no such inference. It alleges the opposite: two people

formed a duo, operated under a shared name, and divided the proceeds evenly. Neither is presumed to have held a veto over the other.

**Objective manifestations of shared intent.** In February 2019, the parties agreed to a 50/50 production split and equal publishing splits "for each composition"—"the same splits [that] had been in effect throughout the parties' decades-long relationship." SAC ¶¶ 36, 63, 107. A publishing split allocates the composition copyright. An agreement that each collaborator receives half the publishing on every composition they create together objectively manifests an intent to be co-authors, yet the Motion does not address it. The Ninth Circuit's model instruction accordingly asks first whether the parties agreed and directs the factfinder to consider control, intent, and audience appeal only "[i]f there is no such agreement." Ninth Cir. Model Civ. Jury Instr. 17.9 (2026). Courts likewise treat collaborators' agreements as objective evidence of whether they regarded themselves as co-authors. *Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998). The production split supplies the same evidence as to the master; together, the two splits cover both copyrights generated by a recorded song.

*Aalmuhammed* is materially different. There, the Ninth Circuit found no objective manifestation of shared intent because no agreement made the plaintiff an author: he was not the film's "inventive or master mind," the defendants made no "objective manifestations of an intent to be coauthors," and Lee "had final say." 202 F.3d at 1235-36. Hugo, by contrast, is alleged to be a founder of the enterprise; a fifty-percent owner of the entities through which it operated, SAC ¶ 34; a party to an express agreement allocating publishing and production evenly for each work; and the person whose programming, instrumentation, and sound design defined its output, SAC ¶¶ 22, 36. *Aalmuhammed*, 202 F.3d at 1235 ("The best objective manifestation of a shared intent, of course, is a contract saying that the parties intend to be or not to be co-authors."). Williams' February 2019 statement is itself an objective manifestation of shared intent: he asked Hugo to resume making records under their shared name, on the same equal splits they had always used, because he "never wanted to work without [him] again." SAC ¶ 36. Defendants ignore that allegation and instead posit

a work-for-hire theory unsupported by the pleading.

**Audience appeal depends on both contributors.** The SAC alleges that The Neptunes' genre-blending sound resulted from both men's work and that Hugo's contributions were "indispensable." SAC ¶¶ 20, 22, 26. The appeal of a Neptunes record cannot readily be divided between Williams' vocals and songwriting and Hugo's programming, instrumentation, and arrangement. That inseparability is precisely why the law treats such works as joint.

Defendants' reliance on *Armes* is misplaced. The plaintiff in *Armes v. Post*, 2020 WL 6135068, at *6 (C.D. Cal. Oct. 19, 2020) (miscited by Defendants as 2020 WL 6136785), was an outsider who attended a recording session and contributed creative content. Hugo's allegations are fundamentally different: he was one of the two founding principals of a production team with a thirty-year history and a pre-existing agreement to equal production and publishing shares. Notably, *Armes* found that the plaintiff sufficiently pleaded a shared intent to be co-authors by alleging, as Hugo does here, that "he was invited to write music together with Post and Dukes." *Id.* Moreover, the dismissal was limited to the sound-recording claim because the plaintiff had not sufficiently alleged control over creation of the master. Mot. at 24. Defendants thus concede that *Armes* did not dismiss the composition claim, and it cannot support dismissal of all copyright claims here.

### B. <u>The Second Amended Complaint identifies the works at issue, and, at a minimum, states a claim as to "U Gotta," which defeats dismissal</u>

Defendants' lead argument is that the pleading does not identify the works. It does. It names "U Gotta" by EarthGang, SAC ¶ 62, supported by a public confirmation from the recording artists themselves that Hugo contributed copyrightable expression and was removed as an artist on the track, SAC ¶ 62 n.6. It further identifies the universe from which the remaining works come: the compositions and sound recordings created by Hugo and Williams as The Neptunes during the 2019-2021 collaboration under the Arrangement, across nearly fifty studio sessions. SAC ¶¶ 36-38, 57, 62-65.

That is enough because Rule 12(b)(6) is directed at a claim, not a line item. If Count V states a claim as to any work, Count V survives. Defendants do not argue that the allegations as to "U Gotta" are insufficient: the track is named, the artists have publicly confirmed Hugo's contribution, and Hugo alleges the removal of his credit. A count cannot be dismissed because it may ultimately reach fewer works than pleaded. The phrase "including but not limited to" goes to scope, not plausibility; it is how plaintiffs plead categories whose full extent lies within the defendant's knowledge. The records showing which tracks were created in the nearly fifty sessions, and how they were released, are held by Williams, his entities, the labels, and the publishers. Defendants' own authorities confirm the point: *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc), and *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008), address what the relevant "work" is for authorship analysis, not pleading-stage identification; *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990), addresses what a contribution must be, not how a complaint must describe it.

Defendants' demand for more particularity is especially unfair given that it is within their control. Hugo repeatedly sought the relevant royalty statements, books, and records from 2021 through 2024, but received almost nothing, despite counsel's acknowledgment that additional documents exist. SAC ¶¶ 41-47. The SAC further alleges that numerous songs are missing from Hugo's label and SoundExchange portals and that the relevant royalty information is uniquely within Williams' control. SAC ¶¶ 50 n.4, 80. Those allegations reinforce that the remaining titles and release information are properly obtained through discovery. "U Gotta" clearly illustrates the problem: Hugo alleges that he contributed to the track but was removed as an artist, SAC ¶ 62 n.6, making Defendants' records—not Hugo's recollection of studio sessions—the reliable source for its release and credit history.

Further, this Court and others have held that "the notice-pleading standard does not require Plaintiffs to plead specific details about every instance of infringement. A complaint can identify representative acts of infringement instead of providing an exhaustive list."

*Browne v. Donalds*, 2024 WL 3468898, at *17 (C.D. Cal. May 28, 2024) (Birotte Jr., J.), citing, *inter alia*, *Paramount Pictures Corp. v. Axanar Prods., Inc*., 2016 WL 2967959, at *3 (C.D. Cal. May 9, 2016). In fact, the *Paramount* court rejected the exact same argument that Defendants press here:

> Defendants argue that Plaintiffs fail to plead copyright infringement with sufficient specificity, thus not providing Defendants with requisite notice to determine the potentially infringing works. Defendants argue that Plaintiffs fail to plausibly plead their claims because the FAC does not identify each episode, film, and elements that were allegedly infringed to provide notice of and allow investigation into the claims to assess liability. The Court disagrees. Courts do not require copyright claims to be pled with such particularity; rather, courts find a **complaint sufficiently pled if it 'alleges representative acts of infringement rather than a comprehensive listing**.'

*Id.* (emphasis added); see also *Thunder Studios, Inc v. Kazal*, 2018 WL 5099726, at *3 (C.D. Cal. Mar. 22, 2018) ("[C]ourts do not require plaintiffs to plead copyright claims with particularity. A complaint therefore can identify representative acts of infringement instead of providing an exhaustive list."); *Beom Su Lee v. eBay*, 2017 WL 10373960, at *3 (C.D. Cal. Oct. 4, 2017) ("courts find a complaint sufficiently pled if it alleges representative acts of infringement rather than a comprehensive listing").

Plaintiff acknowledges the one genuine drafting gap, and it is readily cured. In the First Amended Complaint, footnote 6 defined "Copyrighted Works"; in the Second Amended Complaint the capitalized term survives at ¶ 94 but the defining footnote did not. Dismissal of a claim arising from a thirty-year partnership is not a proportionate response. A complaint is read as a whole, and in context "Copyrighted Works" refers to the works described in ¶¶ 57-63, including but not limited to "U Gotta." If the Court prefers the point addressed by amendment rather than construction, Plaintiff will restate the definition.

Defendants emphasize that the First Amended Complaint named eight works and the Second Amended Complaint names one. Mot. at 13, 29. The original complaint was filed January 23, 2026, and the First Amended Complaint followed three weeks later, as of right under Rule 15(a)(1). Narrowing a list of works after further investigation is consistent with

Rule 11, not evidence of bad faith. Defendants invoke *Foman v. Davis*'s "repeated failure to cure deficiencies by amendments previously allowed" factor, but that factor presupposes a prior judicial identification of the deficiency, and amendments taken as of right are not "amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**C. <u>Compositions and sound recordings are separate works—which means any perceived gap in the sound-recording allegations cannot defeat the composition claim.</u>**

Defendants argue that the pleading fails to distinguish musical compositions from sound recordings, invoking *Newton v. Diamond*, 388 F.3d 1189, 1191 (9th Cir. 2004), and *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 877 (9th Cir. 2016). For the purposes of the SAC, this is a distinction without a difference. *First*, the pleading does distinguish them. Paragraph 57 expressly claims interests in both, as Defendants concede (Mot. at 20)—Hugo "possesses substantial copyright interests in musical compositions and sound recordings"—a claim to two categories of copyright, named separately, in the operative paragraph of the count.

*Second*, each category is supported by category-specific facts. As to compositions: Hugo was the "principal composer [and] arranger," SAC ¶ 22, and the parties agreed to 50/50 of "the publishing splits for each composition," SAC ¶ 36. Melody, harmony, and arrangement are the quintessential subject matter of the musical-work copyright, and publishing is the composition side of the business; an agreed, even publishing split "for each composition" is thus an allegation about the musical-work copyright in terms, supplying both the copyrightable contribution and the objective manifestation of co-authorship intent. As to sound recordings: the agreed 50/50 production split allocates the master's economics, and Hugo's responsibility for "programming, instrumentation, and overall sound design" describes the performance and production authorship the sound-recording copyright protects. SAC ¶¶ 22, 36.

*Third*, because compositions and recordings are separate works, a deficiency in the allegations as to one cannot infect the other. That is the corollary of *Newton* and *VMG*

*Salsoul*. If the Court concludes the recording allegations would benefit from more detail, the remedy is to sustain Count V as to the compositions and permit amendment as to the recordings. Defendants' own description of *Armes*, which dismissed "[h]is sound-recording claim," Mot. at 24, concedes that the two are evaluated separately.

Defendants speculate that someone else owns the masters—by work-for-hire agreement, assignment, or label arrangement. Mot. at 20-22. But these are factually intensive affirmative defenses that have nothing to do with sufficiency of pleading claims. In fact, Defendants concede the point: "Defendants do not contend that Hugo must attach or prove his chain-of-title documents at the pleading stage." Mot. at 21. Having conceded it, they cannot obtain dismissal because he did not.

Regardless, "Rule 8 does not require plaintiffs to plead around affirmative defenses." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co*., 931 F.3d 966, 972 (9th Cir. 2019). Work for hire is just such a fact-intensive defense. *Livingston v. Morgan*, 2007 WL 2140900, at *3 (N.D. Cal. July 25, 2007) ("The issue of whether a work is a 'work for hire' is an affirmative defense to a claim of copyright infringement."), citing *Dolman v. Agee*, 157 F.3d 708, 712 (9th Cir. 1998).

Indeed, under 17 U.S.C. §§ 101 and 201(b), a work is made for hire only if prepared by an employee within the scope of employment — governed by the agency factors catalogued in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737-41, 751-52 (1989)—or if it falls within an enumerated category of commissioned works and the parties so agree in a signed writing. Neither appears on the face of the pleading; Hugo is alleged to be a co-founder and equal partner, SAC ¶¶ 20–26, 34, not anyone's employee. Courts therefore decline to decide work-for-hire status on a motion to dismiss.

In *Aquarian Foundation, Inc. v. Lowndes,* the Ninth Circuit applied the *Reid* agency framework and affirmed that a party who retained creative autonomy and was not a traditional employee or functionary did not create works for hire. *Aquarian Foundation, Inc. v. Lowndes*, 127 F.4th 814 (2025). Similarly, in U*.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, the Ninth Circuit held that factual issues as to whether work was made within

the scope of employment precluded resolution as a matter of law. *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (2012). Where a complaint alleges that a party is a co-founder and equal partner rather than an employee, neither prong of § 101 appears on the face of the pleading, and the multi-factor *Reid* inquiry is ill-suited at the pleading stage.

This is equally true in the entertainment industry as well. In *Waite v. UMG Recordings, Inc*., 450 F. Supp. 3d 430, 435 (S.D.N.Y. 2020), a suit by recording artists against their label, the court refused to resolve whether the parties' agreements conferred work-for-hire status on the sound recordings, holding the dispute premature. And in *Fleurimond v. New York University*, 722 F. Supp. 2d 352, (E.D.N.Y. 2010), the court held that whether an employment relationship existed raised factual issues ***inappropriate for a motion to dismiss***—even though the defendant had submitted W-2 forms and emails. See also *Gary Friedrich Enters., LLC v. Marvel Characters, Inc*., 716 F.3d 302, (2d Cir. 2013) (factual disputes over work-for-hire status precluded summary judgment); *Wolf v. Travolta*, 2014 WL 2472254, at *4 (C.D. Cal. June 2, 2014) ("Even if defendants are ultimately correct that plaintiff prepared the [work] as a work for hire, or jointly with [one of the defendants], that determination is a factual question to be resolved at trial or on summary judgment.") (second alteration in original). *Morrill v. Smashing Pumpkins*, 157 F. Supp. 2d 1120, 1126 (C.D. Cal. 2001), on which Defendants rely, was likewise decided on summary judgment after factual development.

Additionally, ownership vests initially in the authors by operation of law, and "[the] authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201(a). Hugo need not plead the absence of a transfer. *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc*., 8 F. Supp. 2d 357, 361 (S.D.N.Y. 1998); see also *Hartmann v. Popcornflix.com LLC,* 690 F. Supp. 3d 309, 316 (S.D.N.Y. 2023) (allegation of ownership suffices at the pleading stage). Whether a third party in fact holds a master or a share of a composition is for discovery.

/ / /

### D. **The arguments about Talamasca and about "credit" do not warrant dismissal of the ownership claim against Williams.**

The allegations against Talamasca suffice to state a claim against the entity and the claim against Williams is untouched either way. The pleading alleges that Williams is the sole or controlling owner of the Defendant Entities, including Talamasca, SAC ¶ 10; that he diverted Company and Neptunes revenues to those entities, SAC ¶ 54; and that Williams and entities he controls exploited the co-authored works without credit or accounting, SAC ¶¶ 65, 105. Read in Plaintiff's favor as required in resolution of this motion, those allegations place Talamasca as a Williams-controlled recipient and exploiter of revenues generated by works Hugo claims to co-own, while Williams denies that co-ownership outright, SAC ¶ 64. An entity that receives and exploits the proceeds of a work whose ownership its controlling principal denies holds an interest adverse to the claimant — a controversy "of sufficient immediacy and reality" at the pleading stage. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Defendants argue that *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 834-35 (9th Cir. 1996), held that "[r]eceiving money from, or participating in the exploitation of, a work is not the equivalent of asserting an adverse copyright title," Mot. at 24-25. But, here, Plaintiff alleges more: receipt by an entity wholly controlled by the person who has repudiated his ownership, as part of an alleged diversion of partnership revenues.

Even if the Court disagrees, the consequence is narrow. The remedy for insufficient allegations against one defendant is dismissal as to that defendant with leave to amend—not dismissal of the count. Count V against Williams would be unaffected, and Defendants concede the pleading alleges an actual controversy as to Williams. Mot. at 24.

Plaintiff asserts no free-standing attribution right under the Copyright Act. There is no VARA claim here, and Plaintiff agrees that 17 U.S.C. § 106A is confined to visual art and that § 106 confers no general attribution right. See *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006). Paragraph 100(c)'s request for "proper credit and attribution" appears in the relief portion of Count V—a

remedy, not a cause of action. Rule 12(b)(6) tests whether a claim has been stated. It is not a mechanism for excising requested remedies. See *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-76 (9th Cir. 2010).

If the Court agrees no attribution remedy is available under the Copyright Act, the consequence is simply that it will not award that relief on Count V. Credit remains relevant for two independent reasons. *First*, Defendants concede that "[l]ack of credit may sometimes constitute evidence relevant to whether claimed copyright ownership was repudiated." Mot. at 25-26. Credit therefore bears on accrual and damages. *Second*, credit is independently available under state law and the Arrangement: the parties agreed Hugo's contributions would be credited, SAC ¶¶ 38, 63, and Williams' alleged fiduciary breaches include taking credit for Hugo's work, SAC ¶ 75. Defendants' request for a separate ruling on credit seeks an advisory determination that Rule 12 does not authorize.

### E. Count VI and the state-law claims belong in this Court, and Defendants' supplemental-jurisdiction argument collapses once Count V survives.

**Count VI falls within the Court's supplemental jurisdiction.** Defendants concede that the accounting claim may provide relief "ancillary" to the copyright claim. Mot. at 26. Thus, if the accounting claim does not arise under the Copyright Act, it falls within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

Defendants' heavy reliance on *Oddo v. Ries*, 743 F.2d 630, 633 & n.2 (9th Cir. 1984), is therefore misplaced. Although *Oddo* characterizes a co-owner's duty to account as arising from equitable unjust-enrichment principles and the general law governing co-owners rather than the Copyright Act, that characterization does not defeat jurisdiction. Congress has expressly provided that "[d]efective allegations of jurisdiction may be amended." 28 U.S.C. § 1653; see *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025) (recognizing that an amendment may change a case's jurisdictional footing). Count VI falls within § 1367(a) because it arises from the same nucleus of operative facts as Count V: the accounting is the remedial consequence of the requested co-ownership declaration and

cannot be adjudicated without determining joint authorship and co-ownership under 17 U.S.C. §§ 101 and 201(a). Courts in this District have exercised supplemental jurisdiction over such claims.

Plaintiff also preserves the alternative position that, where the requested accounting depends on a contested determination of copyright co-ownership, the claim arises under federal law. See *Merchant v. Levy*, 92 F.3d 51, 55-56 (2d Cir. 1996). The Court need not resolve that alternative because § 1367(a) independently supplies jurisdiction.

In *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997), the court held that an accounting claim fell within § 1367 because it measured the plaintiffs' recovery for use of their screenplay, functioned as a remedy for their copyright-related claims, and arose from the same common nucleus of operative fact. Count VI is materially the same: it seeks to measure what Hugo is owed from the works that Count V asks the Court to declare he co-owns. The two counts would necessarily be tried together, and Plaintiff offers to amend ¶¶ 6 and 102 to invoke § 1367(a). Count VI also succeeds on the merits at the pleading stage because *Oddo* recognizes that co-owners must account to one another for profits derived from exploitation of the work, 743 F.2d at 633—the duty alleged in SAC ¶¶ 104-109.

*Zuill v. Shanahan*, 80 F.3d 1366, 1369–70 (9th Cir. 1996), is consistent with this analysis because it treats an accounting as relief flowing from the antecedent ownership determination. Defendants agree, describing an accounting as relief that "potentially may become available as ancillary equitable relief—if Hugo first establishes a viable and timely ownership interest." Mot. at 26. Such ancillary relief follows the ownership claim; it does not support dismissal.

**Count V preserves federal jurisdiction over Counts I-IV.** Defendants' request to dismiss Counts I-IV is expressly conditional: they ask the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) only "[i]f Counts V and VI are dismissed," and they acknowledge that a properly pleaded ownership claim is "the only possible federal anchor" for the case. Mot. at 13, 26-27. Because Count V states a claim arising under the

Copyright Act, the Court has original jurisdiction under 28 U.S.C. § 1338(a), and § 1367(c)(3) does not apply by its terms. See *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010) (original jurisdiction over copyright claim under § 1338(a) supported supplemental jurisdiction over related state claims under § 1367(a)); *Rams v. Recordings*, 2015 WL 13917663, at *2 (C.D. Cal. Nov. 3, 2015) (same); *Nahat v. Ballet San Jose, Inc.*, 2013 WL 5934705, at *3 (N.D. Cal. Nov. 1, 2013) (same). Section 1367(a) therefore reaches Counts I-IV. It codifies the rule of *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966): federal and state claims form one constitutional case when they "derive from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725; see *Royal Canin*, 604 U.S. at 27, 31.

Counts I-IV arise from the same Neptunes and N.E.R.D. relationship, the same Arrangement, and the same withholding of royalties, credit, and records. SAC ¶¶ 7, 75. A dispute between two partners over revenues from the works whose co-ownership Count V places directly at issue is precisely the type of controversy ordinarily tried together.

**Dismissal with leave to amend would not require an immediate jurisdictional dismissal.** Even if Count V were dismissed with leave to amend, relief under § 1367(c)(3) would be premature. Section 1367(c) is discretionary: a court "may" decline supplemental jurisdiction only after considering judicial economy, convenience, fairness, and comity. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000-01 (9th Cir. 1997) (en banc); see also *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988); *Gibbs*, 383 U.S. at 726.

*Royal Canin* draws the controlling distinction. When a plaintiff amends away every federal claim, the remaining state claims are "supplemental to nothing," and jurisdiction ends. But when a court dismisses the federal claims, supplemental jurisdiction "persists," its exercise remains discretionary, and the federal claims are not "gone for good" because "an appellate court may yet revive them." 604 U.S. at 31-34. *Gibbs* similarly explains that, although "[t]he question of power will ordinarily be resolved on the pleadings," whether to exercise that power "remains open throughout the litigation." 383 U.S. at 727. It therefore

affirmed retention of a state claim even after the federal claims failed because the federal issues were not "so remote" that "in effect the state claim only was tried." *Id.* at 728-29.

Defendants may invoke *Gibbs*' statement that state claims "should be dismissed as well" when federal claims are dismissed before trial. *Id.* at 726. But that guidance presupposes federal claims that are actually gone—not a claim dismissed with leave to replead where the plaintiff has already identified the proposed cure. In that circumstance, the *Gibbs* factors favor deferring the jurisdictional determination until the pleadings are settled. Declining jurisdiction now would split one controversy between two courts and duplicate discovery into the same relationship. Nor is Count V merely a federal "appendage" to "what is in effect only a state law case." *Id.* at 727. Copyright ownership is central to this dispute: the publishing, royalties, and credit sought in Counts I-IV flow from the same copyrights addressed in Count V. *Zuill* does not suggest otherwise because that court declined supplemental jurisdiction only after resolving the federal question on the merits, 80 F.3d at 1370—not at the pleading stage while leave to amend remained available.

**Diversity is irrelevant.** The Second Amended Complaint invokes §§ 1338(a) and 1367(a), not diversity jurisdiction. SAC ¶¶ 4-7. Defendants' argument that diversity was lacking when the original complaint was filed, Mot. at 10-11 n.1, 26–27, therefore misses the point. A federal court's jurisdiction "follows from (and only from) the operative pleading," and an amendment adding federal claims "can create federal jurisdiction where it once was wanting." *Royal Canin*, 604 U.S. at 35-36 (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007)). Because the operative pleading asserts a federal claim, the diversity discussion is immaterial.

### F. Defendants' remaining arguments — extrinsic evidence, Rule 12(e), Rule 19, and limitations — provide no basis for relief.

#### *1. Defendants improperly ask the Court to resolve disputed facts on materials outside the pleading.*

Defendants submit the McPherson declaration attaching a March 18, 2022 letter from Hugo's then-litigation counsel Bert H. Deixler (Ex. A) and tolling agreements effective

January 3, 2023 (Ex. B) and November 21, 2025 (Ex. C), supplemented by attorney assertions that Hugo has had "six separate lawyers," that there were eight successive tolling agreements, and that Plaintiff "has not even completed service on the majority of the Defendants." None of these materials test the sufficiency of the pleading; they are offered to build a narrative of delay and to contradict SAC ¶ 55.

The incorporation-by-reference doctrine forbids exactly that. In *Khoja*, the Ninth Circuit warned against the "concerning" practice of using extrinsic documents to [Defendants'] own version of events into the complaint to defeat otherwise cognizable claims," 899 F.3d at 998, and held that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint," *Id*. at 1002-03. *Accord Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001). Courts apply that rule with particular force to copyright ownership, declining to consider affidavits and assignment documents offered on a motion to dismiss to contest the plaintiff's ownership. *Seattle Hunters, LLC v. Thomas Family Farm*, 2014 WL 1674124, at [6] (C.D.C.A. April 9, 2020); see also *Therapeutic Research Faculty v. NBTY, Inc*. 488 F.Supp.2d 991 (2007). A single passing reference to a March 18, 2022 letter "placing Defendant Williams on notice of Plaintiff's claims," SAC ¶ 43, does not make the letter's contents the basis of any claim, much less license argument about accrual. The attorney assertions about prior counsel, tolling history, and service are not evidence and are not in the pleading. All of it should be disregarded.

To the extent the Court does consider these materials, they are Plaintiff's allies. Exhibit A states that by February 2019 Williams told Hugo he "never wanted to work without [Mr. Hugo] again" and asked him to work on songs as The Neptunes; that "it was agreed that there would be a 50/50 production split and that Mr. Hugo would be entitled to agreed upon publishing splits for each song"; and that from 2019 until late 2021 Hugo provided all production services requested across more than fifty studio sessions. Ex. A at 1-2. Those statements corroborate SAC ¶¶ 36-37 directly. Exhibit A further states that counsel had only "[r]ecently … learned that Mr. Williams and his team do not intend to

honor Mr. Hugo's deal," *id.* at 2—which bears on when any repudiation became plain and express and refutes the delay narrative. Exhibits B and C establish a three-year tolling period covering exactly these claims. To the extent SAC ¶ 55's description of the tolling does not match the exhibits, the allegation can be conformed on amendment, and it remains immaterial to the sufficiency of Counts V and VI.

***2. Rule 12(e) relief should be denied because Defendants seek discovery, not intelligibility.***

Rule 12(e) is reserved for a pleading "so vague or ambiguous that the party cannot reasonably prepare a response." Such motions are disfavored and are not a substitute for discovery. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996). Defendants themselves "recognize that Rule 12(e) motions are disfavored where a defendant seeks detail obtainable in discovery," Mot. at 30.

That limitation reflects Rule 8's design: notice pleading relies on liberal discovery and summary-judgment procedures to define disputed facts and issues rather than requiring evidentiary detail in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-14 (2002); *Perfect 10*, 167 F. Supp. 2d at 1120 ("Copyright claims need not be pled with particularity.").

Defendants clearly know what this case is about and have adequate information to answer. Their thirty-four-page Motion, which engages the *Aalmuhammed* factors, the composition/recording distinction, chain of title, supplemental jurisdiction, Rule 19, and limitations, shows that they understand the claims well enough to respond. Defendants can admit or deny that Hugo co-authored "U Gotta," that the February 2019 Arrangement was made, and that Hugo attended nearly fifty sessions. SAC ¶¶ 36-37, 62.

Their ten-item demand, Mot. at 33, asks for the percentage interest claimed in each work and whose interest would be reduced, every third-party owner, the "basis of present ownership," and the specific conduct constituting repudiation. Those are matters for contention interrogatories and document requests under Rules 26 and 33; no pleading rule requires a plaintiff to plead his damages apportionment or to negate an affirmative defense.

### *3. Rule 19 joinder concerns are premature and were never properly raised.*

Defendants did not move under Rule 12(b)(7) yet speculate that unidentified third-party co-writers may be required parties. The argument fails on its own terms. Defendants concede that "[t]he point is not that every copyright co-owner invariably must be joined; Rule 19 requires a fact-specific inquiry." Mot. at 31. And the burden of showing that an absent person is required rests on the movant. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); see also *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). Speculation about persons Defendants do not name, as to works they say are unidentified, cannot carry that burden on a motion that does not invoke the rule.

The concern is also easily addressed. Like the *Armes* plaintiff—whose approach Defendants hold up as the model, Mot. at 31-32—Hugo can limit his claimed interest to the share Williams holds or claims and disclaim any challenge to third-party co-writers' shares. A declaration allocating Williams' claimed share between Williams and Hugo impairs no absent writer's interest.

### *4. Defendants' limitations "implications" provide no basis for dismissal, and their own exhibits defeat them.*

Defendants do not move to dismiss on a statue of limitations grounds. They raise only limitations "implications." A limitations dismissal under Rule 12(b)(6) is proper only where the running of the statute is apparent on the face of the complaint. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995). It is not apparent here. A co-ownership claim accrues upon a "plain and express repudiation" communicated to the claimant. *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996); see also *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994); 17 U.S.C. § 507(b). The pleading alleges the collaboration ran from 2019 through late 2021 and that Williams' failure to honor Hugo's entitlements came "[t]hereafter." SAC ¶¶ 37-38. When a plain and express repudiation occurred as to each work is a question of fact.

Defendants' own exhibits settle the point. The tolling agreements they submitted tolled all "Claims"—defined to include claims related to intellectual property, monies, and production/publishing credit as to "musical tracks and/or albums … written, performed, and/or produced (whether in whole or in part) by Hugo"—from January 3, 2023 through January 24, 2026, and Williams, for himself and the "Williams Parties" (including Talamasca), waived any time-based defense for that period. Ex. C ¶ 1; Ex. B. The original complaint was filed January 23, 2026, and the First Amended Complaint adding Counts V and VI on February 12, 2026. Those counts relate back under Rule 15(c)(1)(B) because they arise out of the same conduct and occurrences set out in the original pleading. Even without relation back, only about nineteen untolled days elapsed after January 24, 2026, so any repudiation after approximately January 2020 is timely under § 507(b). Work-by-work accrual questions are factual and cannot be resolved now.

### G. **<u>If the Court finds any deficiency, leave to amend should be freely granted, and Plaintiff has already identified exactly what he will plead.</u>**

"If a motion to dismiss is granted, the court should 'freely give leave [to amend] when justice so requires.'" *Deal v. Henry*, 2026 WL 2127169, at *5 (C.D. Cal. June 30, 2026) (Birotte Jr., J.), citing Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) directs that courts should freely give leave when justice so requires, a command applied "with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003). Dismissal without leave is improper "unless it is clear … that the complaint could not be saved by an amendment." *Id.* at 1052; *Lopez v. Smith*, 203 F.3d 1122, 1127, 1130 (9th Cir. 2000) (en banc).

Indeed, "[l]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963). Such leave is freely and liberally granted as a matter of judicial policy. See Fed. R. Civ. P. 15(a)(2); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("Courts are free to grant a party leave to amend whenever 'justice so

requires,' and requests for leave should be granted with 'extreme liberality.'"). Furthermore, dismissal of a complaint without leave to amend "is improper unless it is clear … that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *see also Center for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005) (remanding the case with instructions to permit plaintiff to amend its complaint since "[i]n sum, it is not ***clear beyond doubt*** that amendment of the complaint would be futile") (emphasis added).

In fact, judicial authority and policy weighs so heavily in favor of freely and liberally granting leave to amend that inferences should be drawn by the court from a plaintiff's pleading in favor of granting leave to amend a pleading. *See Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (determining that even though plaintiff's previous amended complaints might have been filed in bad faith, since there was no evidence in the record that his subsequent amended complaint would have been filed in bad faith, even if the district court's decision was based on a finding that plaintiff's previous filings were made in bad faith, amendment still should have been permitted). Therefore, there can be no debate that "[t]he standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (finding that since the court could "conceive of facts" that would render an equal protection cause of action viable, even though the plaintiff only pled an inference of an equal protection cause of action and not a sufficient cause of action, it would nonetheless be an abuse of discretion to deny leave to amend because a court could still "discern from the record no reason why leave to amend should be denied").

Here, every *Foman* factor favors leave: no bad faith; no undue delay—this case was filed in January 2026 and, as Defendants emphasize, no scheduling conference has been held; no prejudice—nothing has been answered and discovery has not begun; and no futility. Plaintiff proposes specifically to amend as follows:

(1) Separate the composition allegations from the sound-recording allegations and, if helpful, plead them as separate counts.

(2) Plead work-specific descriptions of Hugo's contributions — melodies, chord progressions, drum programming, instrumentation, and arrangement on the composition side; production choices and sound design on the recording side.

(3) Plead additional detail on shared intent and control: the February 2019 agreement, the 50/50 splits, co-equal decision-making across the sessions, and any split sheets, registrations, PRO or label credits, and communications.

(4) Restate the definition of the term "Copyrighted Works."

(5) Amend the jurisdictional allegations at ¶¶ 6 and 102 to invoke 28 U.S.C. § 1367(a) as to Count VI.

(6) Limit the claimed interest to Williams' share, disclaim challenges to third-party shares, and include a Rule 19(c) statement.

(7) Plead the dates and manner of repudiation and conform the tolling allegations.

Defendants ask the Court to impose "strict limits" on amendment because of their "repeated failure to cure deficiencies by amendment previously allowed." Mot. at 29. On its face, the cited language refers to successful challenges, the court's guidance in response to those challenges, and resulting amendments. By contrast, this is Defendants' first challenge to Plaintiff's pleading, and the first time this pleading is before the Court. The "strict" limits are thus unsupported.

This Court's recent decisions support this point. In *Deal*, this Court observed that "Plaintiff has already amended the Complaint once, though not in response to a motion to dismiss. This is therefore Plaintiff's first opportunity to amend to address the deficiencies identified by the Court." 2026 WL 2127169, at *6. Accordingly, as "the Court cannot say at this stage that amendment would necessarily be futile … [b]ecause it is conceivable that Plaintiff could allege additional facts" in support of the claims, the Court granted further leave to amend. *Id.* Other courts agree. *E.g., Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1138 (C.D. Cal. 2012) (granting further leave to amend by taking into account that plaintiff's "previously amended versions were submitted without the benefit of any court's input or guidance"), *aff'd sub nom. Casault v. One W. Bank FSB*, 658 F. App'x 872 (9th

Cir. 2016); *accord Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (finding "absence of a definitive ruling" on defendants' dismissal arguments to be "critical" in considering leave to amend).

Still, Plaintiff does not object to a deadline and proposes twenty-one days. Plaintiff has identified the allegations he will add, which shows that amendment would be neither futile nor prejudicial.

## V. CONCLUSION

Hugo alleges that he spent three decades as one half of a two-person duo, under an agreed even split of the publishing and production on the records they made, and he seeks a declaration that he is a co-author of those works. Defendants' objections go to the form of the pleading. The one drafting gap—the missing definition of "Copyrighted Works"—can be cured by a sentence, and the jurisdictional basis for Count VI by a citation to § 1367(a). Neither warrants dismissal or sending the remaining counts to state court.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion in its entirety. In the alternative, Plaintiff requests that the Court (i) grant leave to amend within twenty-one days consistent with Section IV.G above; (ii) defer any determination under 28 U.S.C. § 1367(c) until the pleadings are settled; and (iii) deny the Rule 12(e) request as moot or, in any event, as unwarranted.

DATED: October 16, 2026

**MUNCK WILSON MANDALA, LLP**

By: *_/s/ Brent J. Lehman_*

Brent J. Lehman
Dina Ovsepian
*Attorneys for Plaintiff*
CHARLES EDWARD HUGO
p/k/a CHAD HUGO